### FEASTER v. SOUTHERN RY. CO. et al.

(Circuit Court of Appeals, Fourth Circuit. October 19, 1926.)

No. 2453.

**1. Commerce ☞27(5).**

Cause of action for death of interstate railroad employee during strike, who was actually engaged in local police duty as deputy sheriff, *held* not to have arisen under federal Railroad Employers' Liability Act (Comp. St. §§ 8657–8665).

**2. Removal of causes ☞89(2).**

Complaint in action against railroad and resident sergeant in its police force for death of guard during strike *held*, in connection with affidavits filed by defendants, to show that sergeant was made a party only to prevent removal.

**3. Removal of causes ☞86(10).**

Statement in affidavit of defendant on motion for removal to federal court, with which plaintiff takes no issue, must be accepted as accurate.

**4. Master and servant ☞258(9)—Allegation that railroad guard met death during strike because of inadequacy of guards and weapons held insufficient as against demurrer.**

Allegations in action for death of railroad guard during strike as to inadequacy of guards and weapons *held* insufficient as against demurrer, in absence of showing that death would not have occurred had reasonable diligence been exercised in such respect.

**5. Pleading ☞8(2).**

Allegations of complaint for death of guard during railroad strike relative to defendants ratifying acts of employees thereby contributing to death *held* insufficient, in absence of facts from which conclusion is drawn.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Aiken; Ernest F. Cochran, Judge.

Suit by Mrs. Kate Feaster, administratrix of the estate of E. M. Feaster, deceased, against the Southern Railway Company and another. Judgment for defendants, and plaintiff brings error. Affirmed.

John F. Williams, of Aiken, S. C. (Williams, Croft & Busbee, of Aiken, S. C., on the brief), for plaintiff in error.

P. F. Henderson, of Aiken, S. C. (F. G. Tompkins, of Columbia, S. C., and Hendersons & Salley, of Aiken, S. C., on the brief), for defendants in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

ROSE, Circuit Judge. In this case the plaintiff in error, plaintiff below, and so styled here, seeks to recover from the Southern Railway Company, hereinafter referred to as the railway, and from one Henry Britt, for the death of a certain E. M. Feaster. The suit was originally brought in the court of common pleas for Aiken county, S. C. It was removed to the District Court of the United States on the petition of the railway, on the ground that the plaintiff was a citizen of South Carolina and it a corporation of Virginia, and that plaintiff's controversy with it was separable from any she had with Britt, a citizen of South Carolina; that in fact her complaint as against him disclosed no cause of action whatever, and that in any event his joinder as a defendant was fraudulently made, for no other purpose than that of defeating the railway's right of removal. In support of the last-mentioned ground, the railway filed with its petition two affidavits. The petition was submitted to the learned judge of the state court, who heard argument upon it. After full consideration, in an able and learned opinion, he held that the removal should be made and so ordered. After the transcript of record reached the United States court, the plaintiff moved to remand the cause to the state tribunal, and filed one affidavit in support of her motion. The railway countered with two answering affidavits, and after a hearing the learned District Judge handed down an opinion stating his reasons for refusing a remand. The defendants then demurred to the complaint. After argument the demurrer was sustained, in an opinion which pointed out the respects in which the court thought the allegations of the plaintiff's pleading

failed to make out a case. The plaintiff was given leave to amend if she could. She did not avail herself of the privilege and judgment went against her. She assigns 12 errors, but they raise but two questions: Was the case removable? and did the complaint disclose a cause of action against either defendant?

The circumstances out of which the present controversy arose had their origin in the nation-wide strike of railway shopmen in the summer of 1922. Not a few tragedies, in addition to the one with which we are immediately concerned, grew out of it, or were in time and place associated with it, among them the murder referred to in the recent case of St. Louis, San Francisco Railway Co. v. Mills, 46 S. Ct. 520, 70 L. Ed. 979, decided by the Supreme Court on the 24th of last May.

The complaint alleged that the railway operated in interstate commerce a railroad between Charleston, S. C., and Augusta, Ga., and maintained at Aiken and Hamburg, in the former state, shops and yards for the repair and handling of rolling stock used in such commerce. It said of Britt's relations to the railway that he was "in charge of the shops and yards * * * under some arrangement with his codefendant whereby it became his duty to maintain the forces and orderly management thereof in the shops and yards, * * * and most particularly with respect to the employment, supervision, and maintenance of the watchmen and guards maintained upon" and about the yards and shops "for the protection of the property and property rights" of the railway.

In substance the complaint alleged that, in consequence of the breaking out of the shopmen's strike, the defendants employed Feaster as a night watchman, and that, some time between 3 a. m. and daylight of August 30, 1922, he, while in the discharge of his duties, was shot, beaten, bruised, and killed. It said that his death was due to the negligence of the defendants (1) in failing to give him a safe place to work, in that the yards and shops were surrounded by hills and swamps, were in large part isolated from the traveling public and were wholly without municipal protection; (2) in not providing him with proper appliances for his work, in that they did not furnish him with sufficient weapons or enough fellow guards to enable him to perform his duties without extreme danger of losing his life; (3) that they allowed some of the railway employees known by them to be hostile to

him and his fellow guards to come into and work in the shops and yards, so that such employees had an opportunity to act, not only as spies, but as actual instruments of murder, and that such employees contributed to his death. There then follows a very generally worded allegation, which, if it is to be given its broadest interpretation and then taken literally, amounts almost, if not quite, to a charge that the defendants made themselves accessories after the fact to the murder. It is said that after Feaster's death the defendants entered into an agreement with the employees who had contributed to his killing to retain them in the employ of the railway, and that at the time such agreement was made they had full knowledge of the part such employees had played in his death, so that they thereby ratified, encouraged, and confirmed the acts of the employees in question.

The complaint further asserted that the defendants knew of all the dangers of the employment into which they had permitted Feaster to enter, of the numerical inadequacy of the guarding force, of the insufficiency of its weapons, and of the intense hostility of both the strikers and of many other railway employees who were not, to him and his fellow guards, that Feaster was ignorant of all these things, and that the defendants gave him no warning of any of them. The complaint concludes by alleging that by reason of such acts and omissions of the defendants, Feaster was murdered and seeks damages therefor.

The two affidavits which, as has been stated, the railway filed in support of its petition for removal, were made by Britt and by the sheriff of the county in which the yards and shops were, and in which Feaster met his death. From them it appeared that Britt was a sergeant in the railway's police force, and as such had charge of the policing of the Hamburg yards; that in July, 1922, his superior told him to employ three extra guards, and no more; and that in pursuance of this direction he engaged Feaster and two others. Ten days later he was given instructions to engage an additional three, and he did so. He had no authority to employ more. Before Feaster entered upon the duties of his employment, Britt took him and the others employed at the same time to the sheriff of the county at his office in Aiken, and asked to have him and them commissioned as deputy sheriffs, which was done.

At that time Feaster was told, by or in the presence of the sheriff, that he was employed because of the strike and would be paid by the railway $4 a day while it lasted; that he was to guard the railway property from violence and depredation; that he was going into a dangerous business; there had been all sorts of crimes in connection with strikes; that there might be a great deal of trouble and violence at Hamburg; that he might be attacked by strikers and other law breakers; that it might be necessary for him to resort to violence and it was desired that he should be given a legal position, so that he should have "authority to combat violence with violence in a legal way." He was directed to have his commission as a deputy sheriff always with him, so as to show his official position, so that, if he had to resort to violence, he would have authority to do so. He was cautioned to be "mighty careful," and was told that, if he was not, "those fellows (meaning the strikers or the lawless element) will get you, sure as hell." He was directed not to go off the railway property, unless Britt told him to do so. Before Feaster went on duty as a guard, he was given a 38 special four-inch barrel Smith & Wesson pistol, costing $37. It is described as a first-class weapon, in good working order.

From these affidavits it appeared that Britt had nothing to do with the re-employment of the strikers or the retention in their jobs of the sympathizing employees who did not strike. When the strike ended the railway reinstated its old employees in their former positions. None of them, so far as it knew, had had anything to do with Feaster's murder. It was not known who had. Five men were indicted for it. They were tried, but all of them were acquitted. The one affidavit filed by the plaintiff in the federal court, and the two which the defendants submitted in reply to it, added nothing of legal moment to the record as it stood when the judge of the state court ordered the removal to be made.

[1] The plaintiff says that, independent of all other grounds, the case should not have been removed, because the complaint shows that it arose under the federal Railroad Employers' Liability Act (Comp. St. §§ 8657–8665). We shall not follow counsel in their analysis of the innumerable cases in which the courts have been called upon to say whether some one in railway employ was engaged in interstate commerce at the time he was hurt. It suffices here that Feaster, although he was employed and paid by the railroad company, was actually engaged in local police duty. He was a deputy sheriff

of the South Carolina county in which the yards and shops were. It is true that in the railway's shops rolling stock used in interstate commerce was repaired, and trains moving in that commerce passed through or halted in its yards, precisely as a steady stream of interstate trains come into and go out of the Pennsylvania Station in New York City; yet we should not be prepared to hold that the municipal policemen on duty there were employed in interstate commerce.

[2] Both Judge Rice, in the state court, and Judge Cochran, in that of the United States, were at one in their conclusion that the plaintiff could have no reasonable ground to believe that she had any cause of action against Britt because of anything she alleged in her complaint. There was no clear statement in it that he had any power to determine how many guards should be employed, or how they were to be armed, or that he, as distinguished from the railway, was charged with the duty of warning Feaster as to the risks he might run. Moreover, so little is told of the circumstances of Feaster's murder, if, indeed, they are known, that it is impossible to say that any negligence of either Britt or the railway in this respect, assuming, contrary to the fact, that any sufficient allegation of negligence on his part was made, in any wise contributed to Feaster's death. For all that appears he might have died when and as he did, had the railway supplied a host of guards and armed them with every instrument of death which modern science is able to provide.

[3] It is true, as has been already mentioned, that the complaint contains an allegation that the defendants ratified the murder by re-employing or retaining in employ the strikers or strike sympathizers who had contributed to his death. The affidavit of Britt says that he had nothing to do with the employment or retention of shop and yard employees. The plaintiff takes no issue with this statement, and she gives no explanation of why she ever supposed that a sergeant of railway police had anything to say as to such matters. His affidavit must therefore be accepted as accurate in the respect now under consideration. Wilson v. Republic Iron & Steel Co., 257 U. S. 92, 96, 42 S. Ct. 35, 66 L. Ed. 144; Wecker v. National Enameling & Stamping Co., 204 U. S. 176, 27 S. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757.

[4] From what has been said, it follows that Britt was made a defendant when plaintiff knew that she had no cause of action against him, and that he was so joined for no other reason than to prevent the exercise by the railway of what would otherwise have been its undoubted right of removal. The remand was properly denied. Wecker v. National Enameling & Stamping Co., supra. It is, moreover, clear that the learned court below was right in sustaining the demurrer to the complaint, as to both defendants, in so far as its sufficiency depended upon its allegations as to the inadequacy of guards, of weapons, or of warnings, because there is nothing in the facts it alleges to show that Feaster would not have come to his untimely end, even though the defendants had in these respects exercised all reasonable diligence. Had any negligence of the defendants contributed in a remote degree to his death, it might have been necessary, as under the circumstances it is not, to consider whether his deliberate murder by persons altogether unconnected with the defendants was not the interposition of such an independent act of others as made it impossible for such negligence to have been in legal contemplation a proximate cause of his taking off.

As it is, we need not inquire whether, upon the facts, such cases as Green v. Atlanta & Charlotte Ry. Co., 131 S. C. 124, 126 S. E. 441, 38 A. L. R. 1448, are to be distinguished from Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97, in which Judge (now Mr. Justice) Holmes, said: "Wrongful acts of independent third persons, not actually intended by the defendant, are not regarded by the law as natural consequences of his wrong, and he is not bound to anticipate the general probability of such acts, any more than a particular act by this or that individual," or, if they are not, whether they were rightly or wrongly decided, or if in our view the latter should seem to be the case, we are nevertheless bound in such a matter to accept the ruling of the highest court of the state in which the suit was brought.

[5] All that remains for consideration is that part of the complaint which seems to say that the defendants ratified the murder. It may be well to quote the exact language in which this charge is made. It is: "Plaintiff alleges upon information and belief that employees of the defendants and in another department of labor from that of" Feaster "contributed to the bringing of" his "death, * * * and after he was slain in neglect and malice and out of wantonness and reckless disregard of his rights, the defendants, with full knowledge of these matters, deliberately entered into an agreement to retain and did retain, such employees, thereby rati-

fying, encouraging, and confirming the aforesaid negligent, reckless and malicious acts of its said employees."

There is here no lack of condemnatory epithets, but it is for all that not easy to understand what some of this verbiage means. No "negligent" acts have been laid to the door of these employees. The complaint charges them with the willful aiding and abetting of the murder, if not with an actual participation therein. The criticism is chiefly important as illustrating with what lack of precision language is used. We agree with the learned District Judge that the quoted allegations "are merely conclusions of the pleader and do not state facts." If the plaintiff had knowledge of any circumstances which justified so grave a charge as she apparently intended to make, it was her duty to state them. There was no error in sustaining the demurrer. The plaintiff was given the opportunity to make her allegations more precise. She did not do so.

Affirmed.