## HALDERMAN v. PENNSYLVANIA R. CO.
### No. 277.

Circuit Court of Appeals, Second Circuit.
Aug. 25, 1931.

SWAN, Circuit Judge, dissenting.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Morton L. Fearey and G. F. Tinker, both of New York City, of counsel), for appellant.

Stephen A. Machcinski, of New York City (Edward J. McCrossin, of New York City, of counsel), for appellee.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This action was brought under the Federal Employers' Liability Act (45 USCA §§ 51–59) to recover damages for injuries sustained by the plaintiff at about 9:30 a. m. on May 19, 1926. The principal defense to the action was that the plaintiff was not in the employ of the defendant at the time of the accident, but under the direction and control of a forest fire warden of the State of Pennsylvania by whom he had been directed to assist in extinguishing a fire.

Laws of Pennsylvania 1923, P. L. 498, 582, § 1620, regulating the powers and duties of the department of forestry, empower the forest fire warden "to employ such other persons as, in his judgment, may be necessary to render assistance in extinguishing forest fires, and to compel the attendance of persons and to require their assistance in the extinguishing of forest fires."

The plaintiff was a track laborer in the general employ of the defendant railroad. His injuries resulted from the loosening of a bar that connected a trailer car, on which he was riding, with a motor flat car ahead of it, the disconnection of which derailed the trailer. The plaintiff was going to the place of the fire at the time. The railroad company contends that he was going in obedience to the orders of the fire warden and was under the latter's control, while the plaintiff says that he was going by the order of the railroad track supervisor to patrol the right of way in order to protect the railroad property.

The factor which determines the source of the employment in such a case and fixes the relation of master and servant is control and supervision, and not payment of wages. Linstead v. C. & O. Ry. Co., 276 U. S. 28, 48 S. Ct. 241, 72 L. Ed. 453; Standard Oil Company v. Anderson, 212 U. S. 215, 29 S. Ct. 252, 53 L. Ed. 480. If the plaintiff was going to the fire by order of the forest fire warden in order to fight fire under the latter's supervision, it could not be said that he was engaged in interstate commerce, or in work closely connected with it, and the Federal Employers' Liability Act (45 USCA §§ 51–59) would not apply. While the track on which the trailer was running was an interstate track, the plaintiff, under the foregoing hypothesis, would be going to the fire to protect the forests, or the property of the people of Pennsylvania, and not to engage in interstate commerce. Chicago, Burlington & Q. R. R. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; Shanks v. Del., Lack. & West. R. R., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797; Industrial Commission v. Davis, 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888; Feaster v. So. Ry. Co. (C. C. A.) 15 F.(2d) 540; Hudson & M. R. Co. v. Iorio (C. C. A.) 239 F. 855; Buynofsky v. Lehigh Valley R. R. Co., 228 N. Y. 249, 126 N. E. 714.

A fire had broken out on the afternoon of May 17, 1926, on the southerly side of the defendant's railroad track, near the vil-

lage of Lykens. The Pennsylvania's track ran from west to east, and the fire was not more than 25 or 30 feet from the southerly side of it, and was working southeast because of a northwesterly wind. The local fire warden, Bichler, called for assistance, as he had the right to do under the statute, and men from a nearby colliery, as well as others, came at his summons to fight the fire. That evening it was thought to be under control, and the men left. The next day, May 18th, it started up again and burned with renewed vigor, whereupon the fire warden, as he testified, communicated with the track supervisor of the defendant at Millersburg and asked for help. The supervisor sent some men, including the plaintiff, to the place, in charge of two section foremen, Bubb and Schreiber. These men worked until 1 or 2 o'clock in the morning of May 19th, when they returned to their homes at Millersburg. The plaintiff testified that his foreman Bubb ordered him to go up above Lykens and fight forest fires to protect the railroad property. Another witness, Charles Teats, likewise testified that Bubb ordered him to go above Lykens to protect railroad property. Both the fire warden and the track supervisor had a different version of their directions and indicated that their orders were to return the next morning but in no way referred to protecting the railroad property. At 1 or 2 a. m. of the morning of May 19th, when the men were sent home, the fire had been put out except some stumps, logs, and dead trees. It was practically out, but the foreman told the men to return the next morning. The supervisor said that his order which was given to the foreman was to "go back and patrol the fire line the next morning." Fol. 984. He did this, he said, because of the "possibility of the stumps becoming a nuisance if the wind should change or create sparks, create danger through throwing sparks across the line. * * * Fol. 984. Again he said: "I followed the fire line with Warden Bichler, and at his request or * * * with his consent, I withdrew the men at 2 o'clock in the morning with the understanding that we would come back and patrol the stumps the following morning." Fol. 983.

The plaintiff was injured while going with the gang of track laborers on the morning of May 19th. After the accident, the remainder of the gang went on, and, when they reached the place where the fire had been, patrolled the lines until the middle of the afternoon, but only found a single stump that needed attention and put it out. No other men were sent there on the 19th, and Kerstetter, whose farm and buildings had been endangered on May 17th and 18th, did not go near the place on May 19th, though he had worked hard to put out the fire on the two preceding days. Even James, the special fire warden who worked with the colliery company, and had fought fire on the previous days, did not return on the morning of the 19th.

Moreover, while Bichler was at the fire on the 17th and 18th, he did not return there on the 19th, though he testified that he was under a duty to stay until all the fire was out (fol. 1404) and the defendant's crew were patrolling the place the whole day.

The railroad ties were laid in a cinder bed, so that they would not be affected by anything but a considerable conflagration. Before the 19th, to the south of the tracks, a strip had been cleared of leaves and rubbish so that the fire was very unlikely to spread to the railroad property. There was no fire on either the 17th, 18th, or 19th that interfered with the regular running of the trains. It is evident from all the testimony that the fire that remained after 2 a. m. on May 19th amounted to very little.

There certainly is considerable evidence indicating that Bichler had abandoned all supervision of the burned tract on May 19th and regarded the danger as then past. It is contended by the railroad that this was not so and that the track foremen and their two gangs were still under his direction and control. There is against this, however, the proof: (1) That Bichler did not go near the place of the fire on the day of the 19th; (2) that the special state fire warden from the colliery company did not return on that day; (3) that none of the men from the colliery came back; (4) that Kerstetter, whose farm and buildings had incurred the principal danger, had fought fire on the 18th but did not come near the place the next day; (5) that the only people who did go back were the two gangs of trackmen of the Pennsylvania Railroad; (6) that according to Halderman's story he was ordered in the beginning to go and protect the railroad property.

It is true that the testimony of Halderman about protecting railroad property was not given at the first trial of this case and seemed to be forthcoming to meet the exigencies of the second one. He originally testified that Bubb had told him "to get ready and fight the fire," and added: "That is about all he said to us." But, though this

change of testimony lessens the credibility of Halderman, the jury were at liberty to weigh the two different stories and to believe the later one unless it was met by facts that rendered it incredible. However improbable it may be, it cannot be said to be impossible.

Moreover, even if nothing was said about going up to "protect the railroad property," we still think there was a question for the jury. The railroad was specially interested in preventing the fire from starting again and endangering its ties, rails, and rolling stock and interfering with the operation of its trains. It is notorious that forest fires started by smokers and campers may run under ground for a long time and then break out again. If the wind had changed, fire from the smouldering stumps on the south side of the tracks might have been blown over them and have reached dry leaves and trees on the slope to the north, both injuring the roadbed and interfering with the passage of interstate trains. Such an injury was unlikely, but a fire that was supposed to be put under control on the 17th had broken out on the 18th and might in turn have started up again on the 19th. It cannot be said that the railroad, acting in its own interest, might not reasonably have sent the crew to the place where the fire had been burning two days, for the mere purpose of safeguarding its property and keeping traffic open under all circumstances. Whether it did this or whether the men were sent back by the direction of the forest fire warden, was a question for the jury. If the railroad gave the orders in its own behalf, the purpose and natural result was to facilitate interstate commerce, and injuries suffered by the plaintiff in the course of carrying out such an order were within the purview of the Federal Employers' Liability Act (45 USCA §§ 51–59). Southern Railway v. Puckett, 244 U. S. 571, 37 S. Ct. 703, 61 L. Ed. 1321, Ann. Cas. 1918B, 69.

It is true that Bichler and the supervisor from the railroad company agreed that the direction to return on the morning of May 19th was from Bichler, but their recollection of events five years ago was controverted by Bichler's failure to pay any attention to the fire on that day and by the other considerations we have mentioned. The court left the whole matter to the jury in what seems to us a proper charge.

It is argued that the question whether interstate commerce was actually endangered should have been left to the jury, but we do not think that actual danger was the test of jurisdiction. If the railroad believed with any fair reason that it was important to guard its property from the fire and sent the crew to the place of the fire on May 19th to guard it, such an act was for the purpose of facilitating interstate commerce and had sufficient basis to justify this action. The issues of fact were such that they were properly left to a jury.

We have considered the objections to the charge as to assumption of risk, and believe them without merit.

The judgment is affirmed.

SWAN, Circuit Judge (dissenting).

I agree with the legal principles stated in the opinion of the majority of the court but not in their application of these principles to the proven facts. In my opinion, the record will not support a finding by the jury that plaintiff was engaged in interstate commerce at the time of his injury. Plaintiff worked under Foreman Bubb, who in turn received his orders from Track Supervisor Smith. The testimony is undisputed that Fire Warden Bichler instructed Smith to send up some men to patrol the fire line on the morning of the 19th, and that Smith passed the order on to Bubb. Smith testified to this at fols. 995 and 1126, and said he told the foremen of the two gangs to work under the supervision of the fire warden. Fol. 1128. Bichler testified to giving Smith the order. Fol. 1401. That Bichler did not appear at the burned over tract on the 19th, and that no men other than the two railroad gangs patrolled the fire line on that day are facts not at all contradictory to the testimony of Bichler and Smith. Bichler knew the railroad gangs to be experienced fire fighters and doubtless thought them competent to patrol the smouldering stumps on the fire line without his personal presence or the aid of other men. Hence these facts do not raise any question for the jury as to Bichler's having given the order to which both he and Smith testified. Neither does the plaintiff's testimony, even if given credence despite its absence at the former trial, to the effect that Bubb stated that the purpose of the gang's work was to protect railroad property. Such a statement, even if made by Bubb, was entirely immaterial to the issue of whence the order emanated. Concededly the fire warden had called for the men to be sent out to patrol the fire line on the 19th, and this order Smith passed on to Bubb. Fol. 1237. Hence Smith and

Bubb were both acting as agents of the warden in sending out the men. So it appears to me that there is nothing in the record to justify a finding by the jury that the railroad gave the orders on its own behalf to protect its property and to keep open its track. Accordingly, in my opinion the District Court should have ruled that the plaintiff was not engaged in interstate commerce. I believe the judgment should be reversed.