## SHANKS *v.* DELAWARE, LACKAWANNA AND WESTERN RAILROAD COMPANY.

### ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 477.  Argued November 30, 1915.—Decided January 10, 1916.

To recover under the Employers' Liability Act, not only must the carrier be engaged in interstate commerce at the time of the injury, but also the person injured must be employed by the carrier in such commerce.

Where a railroad company, which is engaged in both interstate and intrastate transportation, conducts a machine shop for repairing locomotives used in such transportation, an employé is not engaged in interstate commerce while taking down and putting up fixtures in such machine shop, and cannot, if injured while so doing, maintain an action under the Employers' Liability Act, even though on other occasions his employment relates to interstate commerce.

214 N. Y. 413, affirmed.

THE facts, which involve the validity of a verdict and judgment in an action for injuries under the Employers' Liability Act, are stated in the opinion.

*Mr. Joseph A. Shay,* with whom *Mr. Nash Rockwood* and *Mr. I. B. McKelvey* were on the brief, for plaintiff in error.

*Mr. Alexander Pope Humphrey,* with whom *Mr. W. S. Jenney* was on the brief, for defendant in error.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

Shanks sued the Railroad Company for damages resulting from personal injuries suffered through its negligence while he was in its employ, and rested his right to

recover upon the Employers' Liability Act of Congress. His injuries were received in New Jersey and his action was brought in the Supreme Court of New York. He prevailed at the trial, but in the Appellate Division the judgment was reversed with a direction that his complaint be dismissed without prejudice to any remedy he might have under the law of New Jersey, and this was affirmed by the Court of Appeals, the ground of the appellate rulings being that at the time of the injury he was not employed in interstate commerce. 163 App. Div. 565; 214 N. Y. 413. To obtain a review of the judgment of the Court of Appeals he sued out this writ of error, which was directed to the Supreme Court because the record was then in its possession. See *Atherton* v. *Fowler,* 91 U. S. 143; *Wurts* v. *Hoagland,* 105 U. S. 701; *Sioux Remedy Co.* v. *Cope,* 235 U. S. 197.

In so far as its words are material here, the Employers' Liability Act declares that "every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce," if the injury results in whole or in part from the negligence of the carrier or of any of its officers, agents or employés. Thus it is essential to a right of recovery under the act not only that the carrier be engaged in interstate commerce at the time of the injury but also that the person suffering the injury be then employed by the carrier in such commerce. And so it results where the carrier is also engaged in intrastate commerce or in what is not commerce at all, that one who while employed therein by the carrier suffers injury through its negligence, or that of some of its officers, agents or employés, must look for redress to the laws of the State wherein the injury occurs, save where it results from the violation of some Federal statute, such as the Safety Appliance Acts.

The facts in the present case are these: The Railroad Company was engaged in both interstate and intrastate transportation and was conducting an extensive machine shop for repairing parts of locomotives used in such transportation. While employed in this shop Shanks was injured through the negligence of the company. Usually his work consisted in repairing certain parts of locomotives, but on the day of the injury he was engaged solely in taking down and putting into a new location an overhead counter-shaft—a heavy shop fixture—through which power was communicated to some of the machinery used in the repair work.

The question for decision is, was Shanks at the time of the injury employed in interstate commerce within the meaning of the Employers' Liability Act? What his employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered.

Having in mind the nature and usual course of the business to which the act relates and the evident purpose of Congress in adopting the act, we think it speaks of interstate commerce, not in a technical legal sense, but in a practical one better suited to the occasion (see *Swift & Co.* v. *United States*, 196 U. S. 375, 398), and that the true test of employment in such commerce in the sense intended is, was the employé at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

Applying this test, we have held that the requisite employment in interstate commerce exists where a car repairer is replacing a drawbar in a car then in use in such commerce, *Walsh* v. *New York, New Haven & Hartford R. R.*, 223 U. S. 1; where a fireman is walking ahead of and piloting through several switches a locomotive which is to be attached to an interstate train and to assist in moving the same up a grade, *Norfolk & Western Ry.* v. *Earnest,*

229 U. S. 114; where a workman about to repair a bridge regularly used in interstate transportation is carrying from a tool car to the bridge a sack of bolts needed in his work, *Pederson* v. *Del., Lack. & West. R. R.*, 229 U. S. 146; where a clerk is on his way through a railroad yard to meet an inbound interstate freight train and to mark the cars so the switching crew will know what to do with them when breaking up the train, *St. Louis, San Francisco & Texas Ry.* v. *Seale*, 229 U. S. 156; where a fireman, having prepared his engine for a trip in interstate commerce, and being about to start on his run, is walking across adjacent tracks on an errand consistent with his duties, *North Carolina R. R.* v. *Zachary*, 232 U. S. 248; and where a brakeman on a train carrying several cars of interstate and two of intrastate freight is assisting in securely placing the latter on a side track at an intermediate station to the end that they may not run back on the main track and that the train may proceed on its journey with the interstate freight, *New York Central R. R.* v. *Carr*, 238 U. S. 260.

Without departing from this test, we also have held that the requisite employment in interstate commerce does not exist where a member of a switching crew, whose general work extends to both interstate and intrastate traffic, is engaged in hauling a train or drag of cars, all loaded with intrastate freight, from one part of a city to another, *Ill. Cent. R. R.* v. *Behrens*, 233 U. S. 473, and where an employé in a colliery operated by a railroad company is mining coal intended to be used in the company's locomotives moving in interstate commerce, *Del., Lack. & West. R. R.* v. *Yurkonis*, 238 U. S. 439. In neither instance could the service indicated be said to be interstate transportation or so closely related to it as to be practically a part of it.

Coming to apply the test to the case in hand, it is plain that Shanks was not employed in interstate transporta-

tion, or in repairing or keeping in usable condition a roadbed, bridge, engine, car or other instrument then in use in such transportation. What he was doing was altering the location of a fixture in a machine shop. The connection between the fixture and interstate transportation was remote at best, for the only function of the fixture was to communicate power to machinery used in repairing parts of engines some of which were used in such transportation. This, we think, demonstrates that the work in which Shanks was engaged, like that of the coal miner in the *Yurkonis Case*, was too remote from interstate transportation to be practically a part of it, and therefore that he was not employed in interstate commerce within the meaning of the Employers' Liability Act.

*Judgment affirmed.*