## INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA ET AL. *v.* DAVIS, AS AGENT, &c. (LOS ANGELES & SALT LAKE RAILWAY COMPANY).

CERTIORARI TO THE DISTRICT COURT OF APPEAL, SECOND APPELLATE DISTRICT, DIVISION TWO, OF THE STATE OF CALIFORNIA.

No. 224. Submitted April 28, 1922.—Decided May 29, 1922.

An engine was sent from exclusive employment in interstate commerce to the general repair shops of the railway company, December 19th, for general overhauling, the repairs, which involved partial dismantling, were completed on the 25th of the following February, and the engine, after a trial, was returned to service, in interstate commerce a week later. *Held* that an employee, injured

in the work on February 1st, was not then employed in interstate commerce, and that his action for the injury was under the state law, and not the Federal Employers' Liability Act.    P. 185. *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.,* 239 U. S. 556.

50 Cal. App. 161, reversed.

CERTIORARI to a judgment of the court below reversing, for want of jurisdiction, an award of compensation for personal injuries; made by the petitioner Commission in favor of the petitioner Burton against the respondent.

*Mr. Warren H. Pillsbury* for petitioners.

*Mr. A. S. Halsted, Mr. Alexander Britton* and *Mr. Charles H. Bates* for respondent.    *Mr. Fred E. Pettit, Jr.,* and *Mr. E. E. Bennett* were also on the brief.

MR. JUSTICE McKENNA delivered the opinion of the court.

O. J. Burton, one of the petitioners, received injuries while working in the general repair shops of the Railway Company upon an engine that had been employed in interstate commerce and which was destined to be so employed again, and the question is whether redress for the injury must be sought through the Workmen's Compensation Act of California (c. 586, California Statutes 1917) or under the provisions of the Federal Employers' Liability Act. (35 Stat. 65).

The proceedings were instituted by Burton by an application to the Industrial Accident Commission of the State which set forth the facts of his injury, and prayed compensatory relief.    Payne and the Railway Company answered, setting up the defense of interstate commerce and the federal act, and that the accident was caused by Burton's misconduct.    The Commission awarded relief.    On petition for review by Payne and the Railway Company, the District Court of Appeal granted a certiorari and reversed the award of the Commission.

The court, after stating the facts, expressed the view that " the sole question presented for " its consideration was whether "" the engine at the time of the accident, [was] engaged in interstate commerce, within the meaning of the Federal Employers' Liability Act (35 Stat. 65)" and concluded, after a review of cases, that Burton's work was " so intimately connected with interstate commerce as practically to be a part of it, and therefore," the Commission " had no jurisdiction ".

The facts are not in dispute. It was stipulated that while Burton was drilling and tapping the boiler of the engine a piece of steel lodged in his left eye; that this was in the course of his employment and caused thereby, and occurred while he was performing service growing out of and incidental to the same.

We may assume, though the fact is contested, that the engine was sent from exclusive employment in interstate commerce to the repair shops. It was sent there for general overhauling December 19, 1918, and was, to a certain extent, stripped and dismantled. It was estimated that the work upon it would be finished January 30, 1919, but it was not actually completed until February 25, 1919. The accident occurred on February 1st of that year. After the repairs were finished the engine was given a trial trip and finally put into service in interstate commerce.

For its conclusion and judgment, the court reviewed a number of cases,[1] and considered that the principle they

[1] *New York Central & Hudson River R. R. Co.* v. *Carr*, 238 U. S. 260; *Louisville & Nashville R. R. Co.* v. *Parker*, 242 U. S. 13; *Erie R. R. Co.* v. *Winfield*, 244 U. S. 170; *New York Central R. R. Co.* v. *Porter*, 249 U. S. 168; *Philadelphia, Baltimore & Washington R. R. Co.* v. *Smith*, 250 U. S. 101; *Pedersen* v. *Delaware, Lackawanna & Western R. R. Co.*, 229 U. S. 146; *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556; *Chicago, Burlington & Quincy R. R. Co.* v. *Harrington*, 241 U. S. 177; *Minneapolis & St. Louis R. R. Co.* v. *Winters*, 242 U. S. 353, and some California cases and federal reports.

established was simple; that its application had been rendered difficult by diversity of decisions in the federal and state courts, and that this court had fixed no rule by which the conflict could be resolved but had remitted the decision of each case to its particular facts. Such action is not unusual, and it is not very tangible to our perception how any other can obtain when the facts in the case are in dispute. Propositions of law are easily pronounced, but when invoked, circumstances necessarily justify or repel their application in the instance and the judgment to be rendered.

And there is no relief from those conditions in the present case and our inquiry necessarily must be whether, considering the facts, the cases that have been decided have tangible concurrence enough to determine the present controversy.

We may say of them at once that a precise ruling, one that enables an instant and undisputed application, has not been attempted to be laid down. The test of the employment and the application of the Federal Employers' Liability Act (in determining its application we determine between it and the California act) is, "was the employé at the time of the injury engaged in interstate transportation or in work so closly related to it as to be practically a part of it?" *Shanks* v. *Delaware, Lackawanna & Western R. R. Co.*, 239 U. S. 556. This test was followed in *Chicago, Burlington & Quincy R. R. Co.* v. *Harrington*, 241 U. S. 177, and *Southern Pacific Co.* v. *Industrial Accident Commission*, 251 U. S. 259.

*Shanks* v. *Delaware, Lackawanna & Western R. R. Co.* is particularly applicable to the present case. It illustrates the test by a contrast of examples and by it, and the cases that have followed it, the ruling of the District Court of Appeal must be judged. The ruling is, as we have said, that Burton's work was so near to interstate commerce as to be a part of it.

The court, we are prompted to say, had precedents in *Northern Pacific Ry. Co.* v. *Maerkl,* 198 Fed. 1, and *Law* v. *Illinois Central R. R. Co.,* 208 Fed. 869, and it was natural to regard them as persuasive as they were decisions of Circuit Courts of Appeal. Both were ably reasoned cases. They differed, however, in their facts. In the first case, Maerkl received injuries while employed as a car carpenter in repairing a refrigerator car at the railroad shops. In the second case, Law was "a boiler maker's helper " and at the time of his injury was helping to repair a freight engine, used by the railroad company in interstate. commerce. It was held in both cases that the work of repair was in interstate commerce.

The facts in the *Maerkl Case,* it may be said, do not identify it with the case at bar. The refrigerator car was not intended for use in interstate commerce only. Its use was for that or " intrastate commerce as occasion might arise." The facts in the *Law Case* do identify it with the case at bar. The period of repairs in it was 21 days, and it was cited as a precedent in *Chicago, Kalamazoo & Saginaw Ry. Co.* v. *Kindlesparker,* 234 Fed. 1, in which the duration of repairs, also upon an engine, was 79 days. The court expressed the view that the difference between that case and the *Law Case* was " in point of time, not in principle," and that the engine at the time of the repairs was an instrument of interstate.commerce, and that Kindlesparker's work " thereon was a part of such commerce." The court seems to have been of the view, and, indeed, expressed it, referring to the *Law Case,* that the test of the work was the instrument upon which it was performed, not the time of withdrawal of the instrument from use. This court reversed the case. 246 U. S. 657.

There are other federal cases in which the decisions are diverse.[1] And there are state cases of which the same comment may be made.

---

[1] *Hudson & Manhattan R. R. Co.* v. *Iario,* 239 Fed. 855; *Director General of Railroads* v. *Bennett,* 268 Fed. 767.

We refrain from a review of our cases.  They pronounce a test and illustrate it.  We are called upon to apply it to the present controversy.  The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce?  Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement, indeed, are necessary to it, but so are all attached to the railroad company, official, clerical or mechanical.  Against such a broad generalization of relation we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce.  In other words, we are brought to a consideration of degrees, and the test declared, that the employee at the time of the injury must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act.  And there is a difference in the instrumentalities.  In some, the tracks, bridges and road bed and equipment in actual use, may be said to have definite character and give it to those employed upon them.  But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use.  Illustrations readily occur.  There may be only a placement upon a sidetrack or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of time, or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations; the relations of a work shop, its employments and employees having cause in the movements that constitute commerce but not being immediate to it.

And it is this separation that gives character to the employment, as we have said, as being in or not in commerce. Such, we think, was the situation of the engine in the present case. It was placed in the shop for general repairs on December 19, 1918. On February 25, 1919, after work upon it, it was given a trial and it was placed in service on March 4, 1919. The accident occurred on February 1st of that year, the engine at the time being nearly stripped and dismantled. "It was not interrupted in an interstate haul to be repaired and go on." *Minneapolis & St. Louis R. R. Co.* v. *Winters,* 242 U. S. 353, 356; *Chicago, Kalamazoo & Saginaw Ry. Co.* v. *Kindlesparker,* 246 U. S. 657.

Further discussion is unnecessary though we are besought to declare a standard invariable by circumstances or free from confusion by them in application. If that were ever possible, it is not so now. Besides, things do not have to be in broad contrast to have different practical and legal consequences. Actions take estimation from degrees and of this, life and law are replete with examples.

*Judgment reversed and cause remanded for further proceedings in accordance with this opinion.*