## CLEMENTS v. NASHVILLE C. & ST. L. RY.

Middle Section.    July 3, 1925.

No petition for Certiorari was filed.

1. **Commerce.    Whether employee was injured in "interstate commerce" determined by connection of employment with interstate transportation.**
    In determining whether an injured employee was engaged in "interstate commerce" within the meaning of federal Employers' Liability Act (U. S. Comp. St. 8657-8665), the test is: Was he, at the time of injury, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it?

2. **Commerce.    Car repairer making general repairs held not engaged in "interstate commerce."**
    In an action by a car repairer to recover for injuries suffered while repairing a car which was withdrawn from service for a period of 21 days, during which time its future service was entirely undetermined though its last trip before and its first trip after repair were in interstate commerce, held he was not engaged in interstate commerce under federal Employer's Liability Act (U. S. Comp. St. Secs. 8657-8665).

Appeal in Error from Circuit Court, Hamilton County; Hon. Oscar Yarnell, Judge.

Affirmed.

Tatum & Thach, of Chattanooga, for plaintiff in error.

Brown & Spurlock, of Chattanooga, for defendant in error.

DeWITT, J. This was an action by an employee of defendant to recover damages under the federal Employers' Liability Act (April 22, 1908, 35 Stat. at L., 65, ch. 149, 8 Fed. Stat. Anno. [2d Ed.] p. 1208 [U. S. Comp. St. Sections 8657-8665]) for personal injuries suffered by the plaintiff through the negligence of a fellow servant, while in the employ of the defendant. The circuit judge, upon motion of the defendant, instructed the jury to return a verdict in its favor, and this was accordingly done. The circuit judge based the instruction upon his judgment that upon the undisputed facts of the case the plaintiff cannot recover under the federal Employers' Liability Act. The plaintiff has assigned as errors that under the undisputed facts he was entitled to recover; that there were material matters of fact to be submitted to the jury as to plaintiff's right to recover; that there is no evidence to support the verdict; that there is material evidence showing that the plaintiff was entitled to recover; and that the court erred in holding that the plaintiff was not engaged in interstate commerce, .and in directing the jury, on this ground, to find a verdict in favor of the defendant. These assignments are all directed to the single question which is here presented and insisted upon and is determinative of the case upon this appeal: Was the plaintiff engaged in interstate commerce at the time he was injured, while repairing a coal car belonging to the defendant, his employer?

The injury occurred on August 15, 1923. The plaintiff was employed as a car repairer by defendant, a common carrier doing both interstate and intrastate business. He was injured while working with a fellow servant named Perry in the repair of a coal car. The car had no top and the sides had been removed. The plaintiff and Perry were tearing out the floor in order to put in a couple of sills, and then the floor was to be replaced. The floor, which ran across the car, was made of rough oak boards and was as long as the car was wide. There were six sills running lengthwise of the car. Plaintiff was taking the flooring loose from the sills, and Perry was also taking the planks loose and throwing them off the car. While thus engaged, Perry took up one plank to which was attached a broken piece. He pulled the broken piece loose, and as he was throwing it off it struck the plaintiff across the breast and arm, knocked him against the drop door of the car, inflicting serious injuries upon him. Plaintiff had no warning of the danger from this act of his fellow servant, and it was evidently the negligent act of the fellow servant which caused the injuries. The car in question was an 80,000-pound capacity coal car. It had arrived in Chattanooga on August 5, 1923, from Birmingham, Ala., on a train operated by the Cincinnati, New Orleans & Texas Pacific Railway Company. On August 5th it was delivered to defendant, its owner,

at what is known as its Cravens Yard. It was tagged, "Home for general repairs." When it was so delivered to the defendant, its car inspector marked it, "to the repair shop for general repairs." It was immediately placed upon a repair track, which was a switch track connected with the lead track connecting with the main line of the railway of defendant. Repairs upon it began at once. It was almost entirely made over. When the work was finished, only the trucks, the long truss rods, two body bolts, and the sills remained as original parts of the car. It was painted and labeled again The repairs were completed on August 26, 1923. The car was marked, "Fit for service," and put on the track to go into service. On the evening of August 27, 1923, because of a call for coal cars, this car was sent out of the state to Bridgeport, Ala. It was assigned at that time to service at the mines on the Sequatchie Valley branch of defendant railway. It had been available for service in either interstate or intrastate commerce, but the proof does not show in which service it was principally used. The bringing of the car to Chattanooga and detention there for the period of 21 days for repairs was not an interruption of any interstate trip, nor was there any designation of the future use of the car until after the repairs were completed. The car was withdrawn from service and kept on the usual repair track until the work on it was completed.

The plaintiff in error relies on the facts that this car came to Chattanooga, for repairs only, from another state, and upon completion of the repairs was sent out of the state He insists, therefore, that at the time of the injury he was engaged in interstate commerce.

In the legal interpretation of these facts we are confronted with an extensive conflict of decisions, but the later cases have tended to clarify the law and make the interpretation more definite. The test, as frequently laid down by the Supreme Court of the United States, is: Was the employee, at the time of his injury complained of, engaged in interstate transportation, or in work so closely related to it as to be practically a part of it? I. A. C. v. Davis, 259 U. S. 187, 42 S. Ct. 489, 66 L. Ed. 892; I. C. R. Co. v. Behrens, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Shanks v. Delaware L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797. In Salmon v. Southern R. Co., 133 Tenn. 230, 180 S. W. 167, decided in 1915, after citing numerous decisions of the federal Supreme Court upon this question, the Supreme Court of Tennessee, through Mr. Justice Neil, said:

> "The substance of these cases on the point under consideration is that there must be an immediate connection between interstate commerce and the act or duty in course of performance at the time the injury occurred."

Again in the same opinion, after analyzing what are known as the Pedersen (229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153), Seale (229 U. S. 156, 33 S. Ct. 651, 57 L. Ed. 1129. Ann. Cas. 1914C, 156), Zachary (232 U. S. 248, 34 S. Ct. 305, 58 L. Ed. 591, Ann. Cas. 1914C, 159), Carr (238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298), Rogers (221 F. 52, 136 C. C. A. 530), and Behrens (233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163) Cases, decided by the United States Supreme Court, our Supreme Court made the following deductions:

"The Supreme Court cases we have referred to in the order of their publication seem to show a progressive tendency towards requiring a closer and closer connection with some act of interstate commerce, or with the early repairing of some interstate agency. A lax construction would soon flood the dockett of the Supreme Court with a vast number of cases from the state supreme courts; besides, as we think, unduly curtail the operation of the laws of the several states, as regards actions to recover damages for injury or death caused by some wrongful act."

In C., N. O. & T. P. R. Co. v. Morgan, 139 Tenn. 31, 201 S. W. 129, our Supreme Court said:

"Each case based on the act must be decided in the light of its own facts, and necessarily there arise many border-line cases."

The test by which to determine whether, at the time of a given injury, the employee was engaged in interstate commerce transaction, is: Was his act one which was so directly and immediately connected with such business as substantially to form a part or a necessary incident thereof? New York Cent., etc., R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298.

In applying the test, differences in the nature of the instrumentalities, the duration of time taken for repairs, any designation or intention as to future use, have been taken as important elements. In I. A. C. v. Davis, 259 U. S. 187, 42 S. Ct. 491, 66 L. Ed. 892, Mr. Justice McKenna, speaking for the court, said:

"There is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. Illustrations readily occur. · There may be only a placement upon a side track or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of time, or there may

be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations; the relations of a workshop, its employments and employees having cause in the movements that constitute commerce but not being immediate to it.

"And it is this separation that gives character to the employment, as we have said, as being in or not in commerce. Such, we think, was the situation of the engine in the present case."

In that case it was held that a railway employee injured while working in the general repair shops of a railway company upon an engine that had been employed in interstate commerce, was not at that time employed in interstate commerce, within the meaning of the federal Employers' Liability Act, where the engine, at the time of the accident, was nearly stripped and dismantled, and had been in the shops more than a month, and was not placed in the service for another month.

In Minneapolis & St. Louis R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 171, 61 L. Ed. 358, Ann. Cas. 1918B, 54, the plaintiff was injured while making repairs upon an engine, which had been used in both interstate and intrastate transportation, and it was so used after the plaintiff's injury. The last time before the injury on which the engine was used was on October 18, when it pulled a freight train into Marshalltown, Iowa, and it was used again after the accident on October 21, to pull a freight train out from the same place. The court, through Mr. Justice Holmes, said:

"That is all we have, and is not sufficient to bring the the case under the act. This is not like the matter of repairs upon a road permanently devoted to commerce among the states. An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time not upon remote probabilities or upon accidental later events."

This decision in the Winters Case followed other cases previously decided by the court, especially the case of Illinois Central Railroad v. Behrens, 233 U. S. 478, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163, in which the court said with emphasis that the test is the nature of the work being done at the time of the injury.

Iñ Pedersen v. Delaware, L. & W. R. Co.; 229 U. S. 146, 33 S. Ct. 648, 57 L. Ed. 1125, Ann. Cas. 1914C, 153, the Supreme Court held, in 1913, that a workman carrying a sack of bolts to a bridge regularly used in interstate commerce for the purpose of repairing the bridge was employed in interstate commerce within the meaning of the act. The decision was grounded upon the obvious necessity of maintaining in repair a bridge regularly so used, as in furtherance of interstate transportation.

In Roberts on Federal Liability of Carriers, Section 490, is a clear differentiation between the Pedersen Case and the Winters Case. It is there pointed out that a bridge, composing a part of a line of an interstate railroad, is an instrumentality which necessarily is permanently devoted and assigned to interstate transportation, and hence the work of repairing such a structure constitutes employment under federal control. However, the engine, while being repaired by Winters, was not then used in interstate commerce, but was idle in the shops, and, what is more to the point, had not been so assigned to interstate transportation at the time of the injury so that an employee in repairing it could also be said to be engaged in that commerce. The engine was used in both kinds of commerce and not definitely assigned or devoted to either, though it so happened that it pulled an interstate train on its last trip and was thereafter used in like employment.

In Chicago, K. & S. R. Co. v. Kindlesparker, 234 F. 1, 148 C. C. A. 17, the Circuit Court of Appeals held that where an engine used in interstate commerce was withdrawn from service for repairs and on being repaired was again used in interstate transportation, the engine, though the repairs extended over several months, was not withdrawn from interstate commerce, and a repairer injured might sue under the federal Employers' Liability Act. But the judgment in this case was reversed by the United States Supreme Court upon the authority of the Winters Case on April 29, 1918. Chicago, K. & S. R. Co. v. Kindlesparker, 246 U. S. 658, 38 S. Ct. 425, 62 L. Ed. 925.

In Southern Pac. Co. v. Pillsbury, reported in 170 Cal. 782, 115 P. 277, L. R. A. 1916E, 916, the California Supreme Court held that one engaged in repairing a switch engine, which had been withdrawn from the service and was in the roundhouse when the injury occurred, was under the protection of the federal statute. The Supreme Court of the United States denied a writ of certiorari to review this opinion five months after it had decided the Winters Case, supra, which had established the law to the contrary. But in Hines v. I. A. C., 184 Cal. 1, 192 P. 859, 14 A. L. R. 720, decided in 1920, the California Supreme Court decided this precise question in accord with the Winters Case, and in 1921 the United States

Supreme Court denied a petition for writ of certiorari in the Hines Case, again placing its ruling in line with the Winters Case.

In the notes to Stavros v. Chicago, M. & St. P. R. Co., 151 Minn. 251, 186 N. W. 942, in 24 A. L. R. 636, the learned annotator deduces from the latest cases on this subject the rule that if the repairs are of such character that the engine or car upon which they are made must be definitely withdrawn from all traffic while they are in the progress, so that for the time being it is like the buildings or other property of the company not actually used in transportation, the work is not within the protection of the federal act. In our opinion, this deduction is sound, is amply warranted, and the rule so stated applies to the facts of the instant case. The plaintiff in error relies principally upon the cases of Northern Pac. R. Co. v. Mearkl, 198 F. 1, 117 C. C. A. 237, and Law v. Ill. Cent. R. Co., 208 F. 869, 126 C. C. A. 27, L. R. A. 1915C, 17. The Maerkel Case, decided by the United States Circuit Court of Appeals in 1912, is hardly distinguishable upon its facts from the case at bar. The Law Case, decided in 1913, is distinguishable, in that the engine under repair was regularly used in interstate commerce.

The Maerkl Case was cited in the Pedersen Case by the Supreme Court only in support of the general rule that the true test is: Is the work in question a part of the interstate commerce in which the carrier is engaged? Both the Maerkl Case and the Law Case were referred to by the United States Supreme Court in I. A. C. v. Davis, 259 U. S. 186, 42 S. Ct. 489, 66 L. Ed. 891, as ably reasoned cases. In the Davis Case, the court said that the court below, in awarding judgment for the injured employee, Burton, had precedents in these two cases; but the judgment based upon those cases was reversed. The court held that the facts in the Maerkl Case did not identify it with the Davis Case; that the facts in the Law Case did identify it with the case then at bar. While it is difficult to understand these comparisons made by the learned court, it nevertheless is significant that the court cited the Winters Case with approval. Thus the doctrine of the Winters Case must in the end be taken as the true rule controlling the case now before this court.

The car in question was completely withdrawn from service for a period of 21 days. During this time its future service was entirely undetermined. The withdrawal of it did not hinder or impair any interstate transportation. The location of it upon the tract customarily used for repairs was in law the same as if it had been within the walls of the shops. The period of detention was seven times as long as the period of detention of the engine as shown in the Winters Case; and the rule in the Winters Case shows that the element of time yields to other factors. The plaintiff, when unfortunately injured while

engaged in the repair of this car, was not engaged in interstate commerce.

The judgment of the circuit court is affirmed. The plaintiff in error will pay the costs of his appeal.

Faw, P. J., and Crownover, J., concur.