## ALDREDGE v. BALTIMORE & O. R. CO.

Circuit Court of Appeals, Eighth Circuit.
June 9, 1927.

No. 7631.

1. **Removal of causes** ⊜⟶107(4)—**Allegation of fraud in petition for removal is not necessary for jurisdiction, on motion to remand, to decide fact determinative of right of removal, alleged in complaint and traversed in the petition.**

District Court, on motion to remand action removed from state court, has jurisdiction to enter on inquiry and decide a fact determinative of right of removal, as whether plaintiff at time of accident injuring him was engaged in interstate commerce, asserted in the answer and denied in the petition for removal, with further allegations in the complaint, not traversed by the petition, of exactly what he was doing at the time, though the petition does not specifically charge fraud in the making of the allegation in the complaint.

2. **Removal of causes** ⊜⟶107(6)—**Striking out words of complaint held not a material error in conduct of inquiry, on motion to remand, as to whether plaintiff was injured while engaged in interstate commerce.**

Relative to conduct of inquiry, on motion to remand to state court, as to whether plaintiff was engaged in interstate commerce at the time of his injury, striking out from the complaint the words "as was usual and customary for him to do," in connection with the allegation that plaintiff, when he met with the accident,

was walking along the tracks of defendant, held not subject to complaint; they not having been stricken till after the motion was decided, and they having no legitimate bearing on the question under consideration.

3. **Removal of causes** ⊜⟶19(5)—**Railroad employee, injured while unnecessarily going along railroad right of way to work, held not then "engaged in interstate commerce," relative to removability of cause (Employers' Liability Act [Comp. St. §§ 8657–8665]).**

A railroad employee, injured a quarter of a mile from his place of work while unnecessarily going, on his way from his home to his work, along a railroad right of way, instead of along a city street, which was a feasible route, and who was under no orders till he reached his place of work, held not "engaged in interstate commerce" at the time, so as to make his case one arising under the federal Employers' Liability Act (Comp. St. §§ 8657–8665) and therefore not removable to federal court.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Interstate Commerce.]

In Error to the District Court of the United States for the Eastern District of Missouri; Charles B. Faris, Judge.

Action by Robert H. Aldredge against the Baltimore & Ohio Railroad Company. Action dismissed, and plaintiff brings error. Affirmed.

W. H. Douglas, of St. Louis, Mo. (Douglass & Inman, of St. Louis, Mo., on the brief), for plaintiff in error.

Douglas W. Robert, of St. Louis, Mo., for defendant in error.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and DAVIS, District Judge.

BOOTH, Circuit Judge. This is a writ of error to a judgment dismissing the action brought by plaintiff in error, because of failure by him to give security for costs in the action as directed by an order of the court theretofore made. The failure or refusal to give such security was based on the alleged ground that the court had no jurisdiction to entertain the action. The facts leading up to the judgment are as follows:

March 19, 1926, plaintiff commenced suit against defendant in the circuit court of the city of St. Louis for damages for personal injuries claimed to have been caused by the negligence of the defendant. The complaint alleged, among other things, that defendant owned certain railroad tracks in the city of East St. Louis, Ill., crossing Ninth street in said city, and running easterly and westerly; that a short distance west of Ninth street were located three switch stands, which controlled

switch tracks connecting the various tracks; that defendant owned said switch stands and tracks and used them in interstate commerce; that at the time of the accident plaintiff was at work for defendant and employed in interstate commerce; that his duties required him to operate said switches; that he lived about half a mile from his place of work; that it was usual and customary for him to walk along the defendant's tracks or right of way from about half a mile west of Ninth street, where he lived, to the switch stands, where he worked; that on April 10, 1925, the day of the accident, his period of work was from 11 p. m. to 7 a. m.; that he left his home to go to his place of work, and walked to defendant's tracks and then along between two tracks; that while so walking, and when about a quarter of a mile from his place of work, he was hit by a car door, or something that resembled a car door, that was projecting out from the side of a car in a train belonging to the Chicago, Burlington & Quincy Railroad Company, which was being run on one of defendant's tracks; that he was injured; and that his injuries were caused by the negligence of defendant in allowing the car door or other object to project out from the car. The complaint was not verified.

On April 17, 1926, the defendant removed the case to the United States District Court for the Eastern District of Missouri. The petition for removal alleged that the controversy was between citizens of different states; that the defendant was a citizen of the state of Maryland, being a corporation organized and existing under the laws of that state; that plaintiff was not a citizen of the state of Maryland, but was a citizen either of the state of Illinois, or of the state of Missouri; that at the times mentioned in the complaint defendant was engaged in interstate commerce; that at no time mentioned in the complaint was plaintiff employed by defendant in interstate commerce or otherwise, but that he was in the employ of the Pennsylvania Railroad Company. The petition for removal was verified.

May 3, 1926, plaintiff filed in the federal court a motion to remand. In the motion he reiterated that at the time of the accident he was in the employ of defendant, and was engaged in interstate commerce. He further alleged:

"That plaintiff had been employed by the defendant for several months prior to the time he was injured, and about two or three weeks before he was injured was sent by the Baltimore & Ohio Railroad Company to the yardmaster of the Pennsylvania Railroad Company, and this yardmaster directed plaintiff to operate the switches, which plaintiff was tending as alleged in his petition for this defendant, and that plaintiff's wages, which were paid directly to him by the Pennsylvania Railroad Company for this work, were in truth and in fact paid by the defendant through some arrangement or agreement between this defendant and the Pennsylvania Railroad Company; the terms of said agreement plaintiff does not know, further than such an agreement existed whereby the defendant paid to the Pennsylvania Railroad the wages which the latter paid to plaintiff for the services which he performed for the defendant at the time plaintiff was injured."

May 11, 1926, defendant filed a motion that the plaintiff be required to furnish security for costs; also a motion to strike out certain portions of plaintiff's complaint. The portions of the complaint sought to be striken were: (1) Those alleging that in going to and from his work it was usual and customary for plaintiff to walk along the tracks or right of way of defendant; (2) those alleging alternatively that he was hit by something extending out from the side of a car that had the appearance of a car door; (3) those alleging that by the law of the state of Illinois a lessor railway company is liable for personal injuries caused by trains operated negligently on its tracks by a lessee railway company.

May 22, 1926, and before the hearing on plaintiff's motion to remand, plaintiff filed an application for an order directing defendant to produce a certain contract to be used on the motion to remand; defendant filed an affidavit in opposition; the court denied the motion. June 28, 1926, plaintiff served notice on defendant to produce certain contracts and other documents at the hearing on the motion to remand. July 6, 1926, the motion to remand was heard, evidence was introduced, and on July 17, 1926, the motion was overruled. August 2, 1926, the court filed an order requiring the plaintiff to furnish security for costs within 10 days; also granting the motion of defendant to strike out certain portions of plaintiff's complaint. September 7, 1926, the court by its order and judgment dismissed the action for failure of plaintiff to furnish security for costs.

It is to be noted that, though the writ of error is to the judgment of dismissal because of failure by plaintiff to furnish security for costs, yet the broad inquiry raised by plaintiff in error and discussed by both parties is

whether the court erred in denying the motion to remand. This broad inquiry resolves itself into three main questions which are raised by the assignments of error:

(1) Did the court have jurisdiction upon the hearing of the motion to remand to enter upon the inquiries raised by the complaint and the petition for removal, to wit: (a) Was plaintiff employed in interstate commerce at the time and place of the injury? (b) Was plaintiff in the employ of the defendant at the time and place of the injury?

(2) If the court did have jurisdiction to enter upon such inquiries, were any reversible errors made by the court in conducting the inquiries or in the preliminary steps leading up to the same?

(3) Was the denial of the motion to remand justified by the law and the evidence? [1] As to the first question, it is contended by plaintiff that the court had no jurisdiction to enter upon the inquiries mentioned, because the complaint alleged that he was employed by the defendant company at the time and place of the accident, and also alleged that both he and the company at the time and place were engaged in interstate commerce, and the petition for removal did not allege specifically that these averments were inserted in the complaint by plaintiff fraudulently or for the purpose of defeating removal. On the other hand, it is contended by the defendant that, inasmuch as its verified petition for removal stated as a fact that plaintiff was not engaged in interstate commerce at the time of the accident, and stated further as a fact that plaintiff was not in the employ of the defendant at the time of the accident, it was proper that the truth of these allegations should be determined by the trial court, because, if the allegations in the plaintiff's complaint were untrue, it would be a fraud in law upon the court thus to prevent removal.

We think that the defendant's contention, in part, at least, is well grounded. While it is true that, in most of the removal cases involving a question of fraud, the removal petition contains allegations directly charging the plaintiff with fraud in making averments in his complaint to defeat removal, yet there may be cases where it is not necessary either to allege or to prove specifically that the plaintiff in making his averments was guilty of fraud in the invidious sense of that term. Wecker v. National Enameling Co., 204 U. S. 176, 185, 27 S. Ct. 184, 51 L. Ed. 430, 9 Ann. Cas. 757; Martin v. N. Y. N. H. & H. R. Co. (D. C.) 241 F. 696.

In the Wecker Case the court in its opinion said (page 185 [27 S. Ct. 188]): "It is objected that there was no proof that Wecker knew of Wettengel's true relation to the defendant, and consequently he could not be guilty of fraud in joining him; but, even in cases where the direct issue of fraud is involved, knowledge may be imputed where one willfully closes his eyes to information within his reach."

In the Martin Case, District Judge Mayer, afterward Circuit Judge, said (page 701): "While defendants, as heretofore stated, do not charge fraud in the sense that this plaintiff administratrix has willfully or deliberately attempted to deceive the court, yet from the allegations in defendants' petition, and the mere allegations upon information and belief of plaintiff's complaint, it is quite manifest that, if the allegations of defendants' petition are true, the result will be a fraud upon the court (if the cause should be remanded), quite irrespective of what was or was not within the knowledge of the plaintiff when she brought her action in the state court."

We think the failure of the removal petition to specifically allege fraud, in view of the specific facts that were alleged in plaintiff's complaint, did not preclude the court from going into the merits of the motion to remand.

It is the further contention of plaintiff that neither the question whether he was engaged in interstate commerce at the time of the accident, nor the question whether he was employed by the defendant company at the time of the accident, could properly be passed upon by the federal court. In support of this contention it is urged: (1) That where the petition for removal in effect merely traverses the allegations of the complaint, no issue is thereby raised for determination on the motion to remand; and (2) that on such motion the court will not go into the merits of plaintiff's cause of action.

The second statement is doubtless correct as a general rule. The first may be conceded to be true also, so far as the traverse relates to facts alleged in the complaint which go to the merits of the cause; but it may not be true if the traverse relates to facts which condition jurisdiction or removability. If plaintiff in the case at bar had alleged in his complaint that he and defendant were both citizens of the state of Missouri, and defendant in its petition for removal had denied that it was a citizen of the state of Missouri, but a citizen of the state of Maryland, it would hardly be contended that the federal court on a motion to remand could

not determine the question of the citizenship of defendant. The issue of citizenship might determine removability and jurisdiction, but it would not determine the merits of the cause of action, and hence would be a proper issue on the motion to remand.

A similar situation existed in the case at bar. Plaintiff alleged in his complaint that he was engaged in interstate commerce at the time of the accident. He went further and alleged exactly what he was doing at the time. The specific allegations control the general allegations. Defendant in its petition for removal traversed plaintiff's allegation that he was engaged in interstate commerce. Defendant did not traverse the allegations in the complaint as to what plaintiff was actually doing at the time of the accident. Those allegations remained uncontroverted. This procedure on the part of defendant was in accord with the rule laid down in Chesapeake & Ohio Ry. Co. v. Cockrell, 232 U. S. 146, 34 S. Ct. 278, 58 L. Ed. 544, where the court in its opinion said (page 151 [34 S. Ct. 279]):

"The right of removal from a state to a federal court, as is well understood, exists only in certain enumerated classes of cases. To the exercise of the right, therefore, it is essential that the case be shown to be within one of those classes, and this must be done by a verified petition setting forth, agreeably to the ordinary rules of pleading, the particular facts, *not already appearing,* out of which the right arises. It is not enough to allege in terms that the case is removable or belongs to one of the enumerated classes, or otherwise to rest the right upon mere legal conclusions. As in other pleadings, there must be a statement of the facts relied upon, *and not otherwise appearing,* in order that the court may draw the proper conclusion from all the facts and that, in the event of a removal, the opposing party may take issue, by a motion to remand, with what is alleged in the petition." (Italics ours.)

There was thus presented to the federal court on the motion to remand the question whether on the undisputed facts plaintiff was engaged in interstate commerce at the time of the accident. The answer to this question conditioned the removability, for if plaintiff was not engaged in interstate commerce, his cause of action was not within the federal Employers' Liability Act (Comp. St. §§ 8657–8665), and therefore was removable. If plaintiff was engaged in interstate commerce, his cause of action was within the federal Employers' Liability Act and not removable. The decision of the question, however, would not in any sense determine the merits of plaintiff's cause of action. It was a proper question for the court to determine on the motion to remand. Our conclusion is that the federal court had jurisdiction to determine the question whether plaintiff at the time of the accident was engaged in interstate commerce.

[2] As to the second question, whether the court in conducting its inquiry committed reversible error, three matters are here complained of: (a) Denial by the court of the motion on the part of the plaintiff to compel defendant to produce a certain contract; (b) refusal by the court to admit in evidence at the hearing on the motion to remand, a certain contract dated February 12, 1926, between various parties, including the defendant company and the Pennsylvania Railroad Company; (c) action of the court in striking out certain portions of the plaintiff's complaint.

The only error alleged under either of these three heads as having any bearing on the question whether plaintiff was engaged in interstate commerce relates to the striking out by the court from the complaint the words "as was usual and customary for him to do," in connection with the allegation that plaintiff, when he met with the accident, was walking along the tracks of defendant.

There is no merit in this assignment of error for two reasons: First, the motion to remand was decided before the words in question were stricken from the complaint. Therefore the words were before the court for consideration on the hearing of that motion, if deemed relevant. Secondly, the words had no legitimate bearing upon the question whether plaintiff at the time of the accident was engaged in interstate commerce.

[3] Passing to the third main question: Was the order denying the motion to remand justified by the law and the facts? As heretofore stated, the facts as to what plaintiff was doing at the time of the accident and immediately prior thereto, are not in dispute. They are gathered from plaintiff's complaint, supplemented by his own testimony. The outstanding facts are: That plaintiff's residence and his place of work were both in the city of East St. Louis, Ill., located about half a mile apart. His work consisted in tending three switches on tracks owned by defendant, and it may be conceded that while tending the switches he was engaged in interstate commerce. On the night of the accident he left his home to go to his place of work. For his own convenience, he chose a route along the right of way of de-

fendant instead of along the city streets. Both routes were feasible. He was under no orders until he reached his place of work. This right of way was not a railroad yard through which he must pass to reach his place of work. While on the right of way and still a quarter of a mile from his place of work, he met with the accident.

Was he engaged in interstate commerce at the time? In Industrial Commission v. Davis, 259 U. S. 182, 185, 42 S. Ct. 489, 490 (66 L. Ed. 888) the court in its opinion said: "The test of the employment and the application of the federal Employers' Liability Act * * * is, 'was the employee at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it?' "— citing Shanks v. D., L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, L. R. A. 1916C, 797. The facts in the Industrial Commission Case were that the employee was engaged in overhauling a dismantled engine which had been used and would again be used in interstate commerce. It was held the employee was not engaged in interstate commerce.

In St. L. S. F. T. R. Co. v. Seale, 229 U. S. 156, 161, 33 S. Ct. 651, 653 (57 L. Ed. 1129, Ann. Cas. 1914C, 156) the test was applied to a clerk who was injured while he was on his way through a railroad yard to meet an inbound interstate freight train, and to mark the cars so that the switching crew would know what to do with them when breaking up the train. It was held he was engaged in interstate commerce. The court said: "The train from Oklahoma was not only an interstate train, but was engaged in the movement of interstate freight, and the duty which the deceased was performing was connected with that movement, not indirectly or remotely, but directly and immediately."

In North Car. R. Co. v. Zachary, 232 U. S. 248, 260, 34 S. Ct. 305, 309 (58 L. Ed. 591, Ann. Cas. 1914C, 159) the test was applied where a fireman, having prepared his engine for a trip in interstate commerce, and being about to start on his run, was walking across adjacent tracks on an errand consistent with his duties. The court said: " * * * It is said that because deceased had left his engine and was going to his boarding house, he was engaged upon a personal errand, and not upon the carrier's business. Assuming (what is not clear) that the evidence fairly tended to indicate the boarding house as his destination, it nevertheless also appears that deceased was shortly to depart upon his run, having just prepared

his engine for the purpose, and that he had not gone beyond the limits of the railroad yard when he was struck. There is nothing to indicate that this brief visit to the boarding house was at all out of the ordinary, or was inconsistent with his duty to his employer. It seems to us clear that the man was still, 'on duty,' and employed in commerce, notwithstanding his temporary absence from the locomotive engine."

In Erie R. Co. v. Winfield, 244 U. S. 170, 173, 37 S. Ct. 556, 557 (61 L. Ed. 1057, Ann. Cas. 1918B, 662) the test was applied where an engineer of a switch engine, having concluded his day's work, which partook of interstate commerce, took his engine to the place where it was to remain for the night, and started to leave the yard across several tracks. The court said: "In leaving the carrier's yard at the close of his day's work the deceased was but discharging a duty of his employment. * * * Like his trip through the yard to his engine in the morning, it was a necessary incident of his day's work, and partook of the character of that work as a whole, for it was no more an incident of one part than of another. His day's work was in both interstate and intrastate commerce, and so, when he was leaving the yard at the time of the injury, his employment was in both." A similar case is Pallocco v. Lehigh Valley R. Co., 236 N. Y. 110, 140 N. E. 212.

In C., B. & Q. R. Co. v. Harrington, 241 U. S. 177, 180, 36 S. Ct. 517, 518 (60 L. Ed. 941) the test was applied where an employee was engaged in removing coal from storage tracks to coal chutes. It was held that the employee was not at the time engaged in interstate commerce, even though the coal had previously been brought from another state and was to be used by locomotives in interstate commerce. The court said: " * * * It is not important whether he had previously been engaged in interstate commerce, or that it was contemplated that he would be so engaged after his immediate duty had been performed."

In Illinois Central R. Co. v. Behrens, 233 U. S. 473, 478, 34 S. Ct. 646, 648 (58 L. Ed. 1051, Ann. Cas. 1914C, 163) the test was applied where an employee of a railroad company, which was a carrier in interstate commerce, was engaged on a switch engine in moving cars loaded with intrastate freight from one point in a city to another. It was held the employee was not at the time engaged in interstate commerce. The court said: "That he was expected, upon the completion of that task, to engage in another

which would have been a part of interstate commerce is immaterial under the statute, for by its terms the true test is the nature of the work being done at the time of the injury."

In Erie R. Co. v. Welsh, 242 U. S. 303, 306, 37 S. Ct. 116, 117 (61 L. Ed. 319) the test was applied where a yard conductor performed services in shifting cars, acting under the orders of the yardmaster. He had finished the orders given him and was going to the yardmaster's office for new orders when he was injured. His next order would have been in interstate commerce. It was held he was not engaged in interstate commerce at the time of the accident. The court said: "It was in evidence, also, that the orders plaintiff would have received, had he not been injured on his way to the yardmaster's office, would have required him immediately to make up an interstate train. Upon the strength of this it is argued that his act at the moment of his injury partook of the nature of the work that, but for the accidental interruption, he would have been called upon to perform. In our opinion, this view is untenable. By the terms of the Employers' Liability Act the true test is the nature of the work being done at the time of the injury, and the mere expectation that plaintiff would presently be called upon to perform a task in interstate commerce is not sufficient to bring the case within the act."

In Symonski v. Central R. Co. (N. J. Sup.) 131 A. 628, 629, 630, the test was applied where an employee of a railroad company was injured while walking along the track of the company toward a station, where he was to take a train to his place of work about four miles distant. When at work he was concededly engaged in interstate commerce. It was held he was not so engaged at the time of the accident. The court said: "In support of the plaintiff's right to maintain his action under the federal Employers' Liability Act, it is argued that, notwithstanding the fact that he was not injured while he was on the defendant's premises in the immediate vicinity of the place where he was employed, nevertheless, since he was on the defendant's premises when he received his injury, and was walking along the defendant's right of way with the purpose to take a train, upon its arrival, at the company's station to be conveyed to his place of employment, he was in legal theory engaged in interstate commerce. We are unable to find sanction of any such theory, either in the federal or state decisions, to which reference has been made in the brief of counsel of plaintiff."

The court further said: "In the absence of any testimony that the plaintiff was directed by the defendant to take the route that he did to reach the defendant's station, or that the defendant exercised any control over his movements, and in view of the further fact that the company had provided a safe means of access to its stations for the general use of its intending passengers, of which the plaintiff was one, it cannot be logically maintained that his election to walk along the defendant's right of way was a necessary incident of his day's work and partook of its character as a whole."

In Krysiak v. Pennsylvania R. Co. (C. C. A.) 270 F. 758, 760, the test was applied where a workman was employed as an engine fire cleaner in an ash pit, which was conceded to be in interstate commerce. He was injured while leaving the premises after his day's work was completed. Instead of leaving by a stairway provided for the purpose, he crossed certain yard tracks and main tracks, as many other employees did. It was held that he was not engaged in interstate commerce at the time of the accident. The court said: "In the Zachary and Winfield Cases the injured employees were still about their employer's business when leaving their work and their departure was necessarily incident to their work and necessarily partook of its character. But here the employee declined to take the safe way provided for him on leaving his work—that is, he declined to take his departure and thereby complete his employment in the way provided—but departed by another way more convenient to him in following his own affairs. * * * When he was killed, he was not engaged in his employer's work, or in an incident to it, but was engaged in his own private concerns."

If now we apply the test to the facts in the case at bar in the light of the foregoing decisions, we reach the unavoidable conclusion that plaintiff was not engaged in interstate commerce at the time of the accident. He was not on duty; he was simply going to a place where he would be on duty. He was not actually performing any task in interstate commerce, nor was his presence on the right of way of defendant a necessary incident to the performance of such task. It follows, since the plaintiff was not engaged in interstate commerce, that the case was not one arising under the federal Employers' Liability Act; but since diversity of citizenship existed between the parties, and the requisite amount was involved, the case was removable from the state to the federal court.

We think the latter court committed no error in denying the motion to remand, or in dismissing the action on failure of plaintiff to provide security for costs.

As these conclusions dispose of the case, it is unnecessary to decide the question whether plaintiff was in the employ of the defendant railroad company or of the Pennsylvania Railroad Company.

Judgment affirmed.