JENNIE Y. MARTIN, RESPONDENT, v. CENTRAL RAILROAD
COMPANY OF NEW JERSEY, PROSECUTOR.

Submitted October 12, 1934—Decided March 28, 1935.

Before Justices HEHER and PERSKIE.

For the prosecutor, *Charles E. Miller*.

For the respondent, *Harvey Rothberg*.

The opinion of the court was delivered by

HEHER, J.  Respondent's decedent, Joseph Y. Martin, suf-
fered death, on November 2d, 1932, by an accident which
arose out of and in the course of his employment with the
prosecutor.  The workmen's compensation bureau awarded
compensation to his dependents under the State Compensa-
tion act.  *Pamph. L.* 1911, *p.* 134.  The Hudson Common
Pleas affirmed the judgment; and the employer sued out a
writ of *certiorari*.

The question at issue is whether the deceased, at the time
he sustained the fatal injuries, was employed in interstate

commerce within the intendment of the Federal Employers' Liability act. 45 *U. S. C. A.,* § 51-59.

The facts are stipulated. Prosecutor is the operator of a railroad in this state. It engages in both interstate and intrastate commerce. In the transaction of such business, it maintains a train shed at its terminal in the city of Jersey City. It employed the deceased as a painter. While engaged in repairing the skylight on the roof of the terminal train shed, he fell through an opening to the railroad tracks below, and thereby sustained the fatal injuries.

Tested by the apposite rule, the service at which the deceased was engaged when the accident befell him falls into the category of interstate commerce. The criterion of employment in such commerce is, was the employe at the time of the injury engaged in interstate transportation or in work so closely related to it as to be practically a part of it. *Rossi* v. *Pennsylvania Railroad Co.,* 115 *N. J. L.* 1. It is essential that the carrier be engaged in interstate commerce at the time the injury is sustained, and that the injured employe be then employed by the carrier in such commerce. The nature of the particular employment on other occasions is of no moment. The act has reference to the service being rendered when the injury was sustained, and it necessarily follows that one may be employed in what is technically interstate commerce, and yet not be a member of the class entitled to the benefits of the federal statute. Mr. Justice McKenna, speaking for the federal Supreme Court, said: "The Federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them, are accessories to that movement—indeed, are necessary to it; but so are all attached to the railroad company—official, clerical or mechanical. Against such a broad generalization of relation, we, however, may instantly pronounce, and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought

to a consideration of degrees, and the test declared, that the employe, at the time of the injury, must be engaged in interstate transportation or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the Federal act. And there is a difference in the instrumentalities. In some, the tracks, bridges, and roadbed and equipment in actual use, may be said to have definite character, and give it to *those employed upon them."* *Industrial Accident Commission* v. *Davis,* 259 *U. S.* 182; 42 *S. Ct.* 489; 66 *L. Ed.* 888.

The formula for the classification of such cases has been stated thus: Was the work being done independently of the interstate commerce in which the defendant was engaged, or was it so closely connected therewith as to be a part of it? Was the performance of this work a matter of indifference so far as that commerce was concerned, or was it in the nature of a duty resting upon the carrier? *Pedersen* v. *Deleware, Lackawanna and Western Railroad Co.,* 229 *U. S.* 146; 33 *S. Ct.* 648; 57 *L. Ed.* 1125. Mr. Justice Vandenventer said: "Tracks and bridges are as indispensable to interstate commerce by railroad as are engines and cars, and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition and efficiency of the commerce depends in large measure upon this being done. Indeed, the statute now before us proceeds upon the theory that the carrier is charged with the duty of exercising appropriate care to prevent or correct 'any defect or insufficiency * * * in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment' used in interstate commerce. But independently of the statute, we are of opinion that the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. * * * Of course, we are not here concerned with the construction of tracks, bridges, engines, or cars which have not as yet become instrumentalities in such commerce, but only with the work of maintaining them in proper

condition after they have become such instrumentalities and during their use as such. True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

A terminal train shed is an indispensable adjunct of interstate passenger transportation; it is clearly an instrumentality used in the conduct of such commerce. That being so, it is incumbent upon the railroad to keep it in repair, and to adopt the measures necessary to safeguard its users; and it is a corollary of this that the work done in the performance of this duty, while it is used in such commerce, is so closely and immediately related to interstate transportation as to be, for all practical purposes, a part of it.

In *Kinzell* v. *Chicago, Milwaukee and St. Paul Railroad Co.,* 250 *U. S.* 130; 63 *L. Ed.* 893, the injured workman was engaged in clearing obstructions from the tracks of a railroad used for interstate commerce, at a point where an earth fill was in process of being substituted for a wooden trestle bridge by which the tracks were carried across a dry gulch—the purpose being to continue the tracks upon the solid embankment when the fill was completed. It was contended that the fill in process was not the repairing of, nor the furnishing of support to, the bridge, and that therefore the principle of the Pedersen case did not apply. This contention was rejected. Mr. Justice Clarke, holding that the doctrine of the Pedersen case was apposite, declared that it could not soundly be said that Kinzell was acting independently of the interstate commerce in which the railway company was engaged, or that the performance of his duties was a matter of indifference to the conduct of that commerce. He was "employed" in keeping the interstate track, which was in daily use, clear and safe for interstate trains. The work had reached the stage "where it required the work of men and machinery to keep the interstate tracks clear during further construction, and the work of such men

was thereafter not only concerned with, it was an intimate and integral part of, the conducting of interstate transportation over the bridge."

So here, the deceased was engaged in work essential for security in the conduct of the railroad's interstate transportation business. The train shed was indisputably an instrumentality of interstate transportation. The work of maintaining this shed was an intimate and integral part of the safe conduct of the railroad company's interstate transportation business. In *Minneapolis Railroad Co.* v. *Winters,* 242 *U. S.* 353; 37 *S. Ct.* 170; 61 *L. Ed.* 358, Mr. Justice Holmes distinguished between "the matter of repairs upon a road permanently devoted to commerce among the states," and a facility, such as a locomotive, that is not "permanently devoted to any kind of traffic."

Respondent invokes the rule laid down in *Pierson* v. *New York, Susquehanna and Western Railroad Co.,* 83 *N. J. L.* 661, and *Granger* v. *Pennsylvania Railroad Co.,* 84 *Id.* 338, which, following *Pedersen* v. *Delaware, Lackawanna and Western Railroad Co.,* 197 *Fed. Rep.* 537, held that the "repairing of an instrument of commerce, which is used sometimes in interstate and sometimes in intrastate transportation, whether it be the roadbed of a railroad, or a car or an engine which is run over it, is not an *engaging* in commerce, but a preparation for engaging therein in the future." But the Pedersen case was later reversed by the Supreme Court. 229 *U. S.* 146; 33 *S. Ct.* 648; 57 *L. Ed.* 1125. The rule there laid down is controlling here. *Rossi* v. *Pennsylvania Railroad Co., supra.* While the Pedersen case antedates the case of *Shanks* v. *Delaware, Lackawanna and Western Railroad Co.,* 239 *U. S.* 556; 36 *S. Ct.* 188; 60 *L. Ed.* 436, which declared the now accepted criterion of employment in interstate commerce, the view therein expressed that the relation of railroad facilities to interstate commerce determines the status of those employed upon them, and the character of their service, has not been overruled. *New York Central Railroad Co.* v. *White,* 243 *U. S.* 188; 37 *S. Ct.* 247; 61 *L. Ed.* 667; *Southern P. Co.* v. *Industrial Accident Commission,* 251 *U. S.* 259;

40 *S. Ct.* 130; 64 *L. Ed.* 258; *New York Central Railroad Co.* v. *Porter,* 249 *U. S.* 168; 63 *L. Ed.* 536; *Kinzell* v. *Chicago, Milwaukee and St. Paul Railroad Co., supra.* In *Southern P. Co.* v. *Industrial Accident Commission, supra,* the workman, an electric lineman, received a fatal shock while wiping insulators supporting a wire which then carried electric power manufactured by the railroad for the propulsion of its cars engaged both in interstate and intrastate commerce. It was held that, power being no less essential than tracks or bridges to the movement of the cars, the service thus rendered was directly and immediately connected with interstate transportation. In *Missouri P. R. Co.* v. *Aeby,* 275 *U. S.* 426; 72 *L. Ed.* 351, the station agent of a common carrier in interstate commerce was held to be engaged in interstate commerce within the intendment of the federal statute; and that the station platform is covered by the word "works" as employed in the provision making the carrier liable for injuries resulting to its employes by reason of any defect or insufficiency due to its negligence in "its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." In *Chicago and Northwestern Railroad Co.* v. *Bolle,* 284 *U. S.* 74; 76 *L. Ed.* 173, it was held that a workman injured while engaged in firing a stationary engine employed to generate steam utilized for heating the baggage room and other structures used for general railroad purposes was not engaged in work so closely related to interstate transportation as to be practically a part of it. It was likened to the cases holding that one engaged in conveying to or depositing in storage bins coal to be used by locomotives engaged in interstate commerce is not within the federal statute. *Rossi* v. *Pennsylvania Railroad Co., supra;* compare, also, *Chicago and E. I. R. Co.* v. *Industrial Commission,* 284 *U. S.* 296; 52 *S. Ct.* 151; 76 *L. Ed.* 304; *New York, New Haven and Hartford Railroad Co.* v. *Bezue,* 284 *U. S.* 415; 76 *L. Ed.* 370. It was pointed out by Mr. Justice Sutherland that the duty of one so engaged "ended when he had produced a supply of steam for that purpose; he had nothing to do with its distribution or specific use."

The prinicple to be deduced from these cases is that where the instrumentality is so directly and immediately connected with interstate transportation as to be practically a part of it, the work done thereon in the performance of the imperative duty to maintain it in a state of repair is properly classable as an engagement in interstate commerce within the intendment of the federal statute; otherwise, it does not fall within that classification. The operation and maintenance of a railroad terminal shed employed in interstate carriage of passengers is as much a part of interstate transportation as the maintenance of the roadbed, bridges and like facilities used in such commerce; one is as essential as the other in the transaction of such business—each is so closely and intimately related to interstate transportation as to be, for all practical purposes, a part of it. The work vital for the safe conduct of such interstate transportation is closely and directly linked thereto.

This criterion has been applied in this jurisdiction. *Vincelli* v. *Central Railroad Co.*, 98 *N. J. L.* 726; *Culp* v. *Atlantic City Railroad Co.*, 93 *Id.* 244; *Hart* v. *Central Railroad Co.*, 106 *Id.* 31; *Stiedler* v. *Pennsylvania Railroad Co.*, 94 *Id.* 197; *Tonsellito* v. *New York Central Railroad Co.*, 87 *Id.* 651; *Lincks* v. *Erie Railroad Co.*, 91 *Id.* 166.

So tested, the deceased was engaged in interstate commerce when he sustained his fatal injuries, and was therefore not entitled to compensation under the state statute.

Judgment reversed.