Matthias, J.
 

 The question is presented whether under the undisputed facts disclosed by the record the plaintiff may recover from the defendants, or either of them. The action of the plaintiff is based upon the Federal Employers’ Liability Act, and is instituted and maintained upon the theory that at the time of the injury he was engaged.in interstate commerce. It therefore becomes a matter of first concern to determine whether the relationship was
 
 *616
 
 such that the provisions of that act have any application to this case.
 

 The car in question, loaded with coal, came into the yards of the Erie Railroad Company from some point in Pennsylvania on November 15, 1923. It was unloaded on November 16th and on November 20th was placed on the repair track for the purpose of having some light repairs made thereto by the Youngstown Equipment Company. Those repairs were made, and on November 22d the car was switched out to the classification yard and held there for disposition; there being no call for that class of equipment at that time. Later it was replaced on the repair track and certain other repairs made, and on November 27th it was switched out to the general yards and held there until December 14th, when it was put into a train of outgoing empty cars.
 

 The Erie Railway Company as a common carrier was subject to the provisions of the Federal Employers ’ Liability Act, but the plaintiff was not entitled to the benefits of that act unless at the time of the injury he was engaged in an act which was a part of interstate commerce.
 

 It is well settled that to recover under the Federal Employers’ Liability Act the person injured must have been employed by the carrier in interstate commerce at the time of the injury.
 
 Shanks
 
 v.
 
 D., L. & W. Rd. Co.,
 
 239 U. S., 556, 36 S. Ct., 188, 60 L. Ed., 436, L. R. A., 1916C, 797. In the course of the opinion in that case it is stated at page 558 (36 S. Ct., 189):
 

 “What his [employee’s] employment was on other occasions is immaterial, for, as before indicated, the act refers to the service being rendered when the injury was suffered. * * * The true test of em
 
 *617
 
 ployment in such commerce in the sense intended is, Was the employee at the time of the injury engaged in interstate transportation 'or in work so closely related to it as to be practically a part of it?”
 

 The claim that the plaintiff was engaged in interstate commerce must rest upon the theory that, the service of this car next preceding the making of repairs thereon having been interstate in character, such was the status of the car at the time the repairs were being made.. This theory is not supported by the decisions of the Supreme Court of the United States.
 
 Illinois Cent. Rd. Co.
 
 v.
 
 Behrens, Admr.,
 
 233 U. S., 473, 34 S. Ct., 646, 58 L. Ed., 1051, Ann. Cas. 1914C, 163;
 
 N. Y. Central & H. R. Rd. Co.
 
 v.
 
 Carr,
 
 238 U. S., 260, 35 S. Ct., 780, 59 L. Ed., 1298;
 
 C., B. & Q. Rd. Co.
 
 v.
 
 Harrington,
 
 241 U. S., 177, 36 S. Ct., 517, 60 L. Ed., 941;
 
 Minneapolis S St. L. Rd. Co. v. Winters,
 
 242 U. S., 353, 37 S. Ct., 170, 61 L. Ed., 358, Ann. Cas. 1918 B, 5
 
 4; Industrial Accident Commission
 
 v.
 
 Davis,
 
 259 U. S., 182, 42 S. Ct., 489, 66 L. Ed., 888.
 

 The test applied by the court in the
 
 Winters case, supra,
 
 is alike applicable here:
 

 “An engine as such is not permanently devoted to any kind of traffic and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended
 
 *618
 
 on its employment at the time, not npon remote probabilities or upon accidental later events.”
 

 That is tbe situation here. This car was not devoted solely to interstate purposes. It bad been so used, but that use bad entirely ceased, and it was placed upon tbe tracks for further disposition, and, during that period, it, of course, was not assigned to any service. The nature of tbe next or further use of tbe car was a matter of future determination, controlled, no doubt, by tbe source of tbe demand therefor. It follows that at tbe time in question tbe plaintiff was not engaged in interstate commerce. No question therefore arises or is presented under tbe Federal Employers’ Liability Act, and the contract in question cannot be held void as violative of any provision thereof.
 

 Under tbe terms of tbe contract in question tbe equipment company became an independent contractor. Tbe railroad company did not retain the right to direct or control tbe mode or manner of doing tbe work. That power was delegated to tbe equipment company and was a part of its duty and responsibility. In this respect, tbe contract meets tbe test applied by this court in tbe case of
 
 Hughes
 
 v.
 
 Cincinnati & Springfield Ry. Co.,
 
 39 Ohio St., 461. It is there held in tbe syllabus as follows:
 

 “A corporation organized for tbe purpose of constructing and operating a railroad, having acquired its right of way by tbe exercise of tbe power of eminent domain, or otherwise, may contract with another person for tbe construction of tbe whole or any part of tbe road, without retaining tbe right to control tbe mode or manner of doing tbe work; and in such case tbe corporation is not liable to third
 
 *619
 
 persons for an injury resulting from the carelessness or willful act of the contractor * * *. A right reserved in the contract, on the part of the railroad company, to direct as to the quantity of work to be done, or the condition of the work when completed, is not a right to control the mode or manner of doing the work, within the rule above stated.”
 

 Substantially the same test was applied to determine the liability for negligence in the case of
 
 Chicago, R. I. & Pac. Ry. Co.
 
 v.
 
 Bond, Admr.,
 
 240 U. S., 449, 36 S. Ct., 403, 60 L. Ed., 735.
 

 In the contract in question here not only was the method and manner of performing the work which the equipment company was employed to do within the power and control of that company, but the plaintiff and all others having anything to do with the making of said repairs were in fact employees of that company and in its service exclusively. The action of the railroad company in designating the repairs it desired to have made, and later ascertaining whether the same had been made in accordance with specifications therefor, did not withdraw from the equipment company its control over the manner of conducting the work in making the designated repairs. The relationship of the equipment company to the railroad company being that of an independent contractor, the railroad company was not liable for injuries resulting from the negligence of the equipment company or any of its employees. Under the facts presented many of the cases cited are not applicable.
 

 The question of the liability of the equipment company in this action depends upon whether it is protected by the provisions of the Workmen’s Com
 
 *620
 
 pensation Law. It is conceded that the equipment company was a contributor to the workmen’s compensation fund of the state, and that it had complied with all the requirements of that law. It was therefore entitled to the benefits thereof. The record discloses that the plaintiff had applied for and received compensation from the Industrial Commission as an employee of the equipment company, and continued to receive and' accept such compensation under an award by the Industrial Commission for the injuries for which he now seeks to recover in this action. It is claimed, however, that the equipment company failed to comply with the provisions of Section 1465-98, General Code, and therefore is not entitled to the benefits of the Workmen’s Compensation Law. It is only necessary to state that the requirement therein set forth can have no application to the equipment company, for the reason that it is not a company “for whom a rule of liability or method of compensation has been or may be established by the Congress of the United States.” This provision quite evidently refers to the Federal Employers’ Liability Act, which applies only to common carriers by rail. The equipment company therefore seems to be such a company as would be required to come within the act, and is not in the class of companies which can exercise an option with reference thereto under the provisions of Section 1465-98, General Code. Neither was there any violation of Section 1465-101, General Code, which precludes employers from relieving themselves by securing indemnity from liability companies.
 

 The inclusion of the amount to be expended as premiums for workmen’s compensation as a part
 
 *621
 
 of the remuneration to the equipment company for the performance of its duties under the contract in question is nowhere prohibited. It follows that the remedy of the plaintiff for any injury sustained by bim is that which he has already asserted under the provisions of the Workmen’s Compensation Law, and that, under the undisputed facts in the record, he has no right of action against either ,the Erie Railroad Company or the Youngstown Equipment Company.
 

 The Court of Appeals was correct in its conclusion that the court of common pleas should have directed a verdict in favor of both defendants. Its judgment is therefore affirmed. .
 

 Judgment affirmed.
 

 Day, Allen, Kinkade, Robinson and Jones, JJ., concur.