LABON CLEVELAND REXROAD *v.* WESTERN
MARYLAND RAILWAY COMPANY.

[No. 5, April Term, 1932.]

*Decided May 18th, 1932.*

The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Estel C. Kelley,* with whom was *William A. Huster* on the brief, for the appellant.

*Paul S. Parsons,* with whom was *Walter C. Capper* on the brief, for the appellee.

PARKE, J., delivered the opinion of the Court.

The questions on this appeal arise in an action which was brought under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51 to 59, inclusive). The railway carrier sued is the Western Maryland Railway Company, a corporation, which is engaged in interstate and intrastate commerce, and the plaintiff, Labon C. Rexroad, is a machinist's helper in the hire of the Dickson Construction & Repair Company, a corporation. The defendant owns the railway property and runs its trains, but employs the last-named company to do its labor (a) in the repair, inspection, and maintenance of its rolling stock and other equipment; (b) in the operation and maintenance of its railway shops, roundhouses, power plants, and other structures and facilities; (c) in the necessary attention at terminals to locomotives, and in the handling of express, baggage, and mail; (d) in the operation of wrecking outfits; and (e) in miscellaneous minor services which do not concern the operation of trains in intrastate or interstate movement. Pursuant to this contract, the Dickson Construction & Repair Company was operating the roundhouse of the railway company at Ridgely, West Virginia, where the locomotives used in either interstate or intrastate commerce were repaired, and where the plaintiff was employed by the Dickson Construction & Repair Company at the happening of the accident which injured the plaintiff.

The accident was at night. A locomotive had been brought into the roundhouse, and a machinist and the plaintiff were engaged in making the necessary repairs. The interior of the roundhouse was well illuminated, but, because of the location of the lights, of the position of certain piers and of the engine being repaired, and of the proximity of an engine on an adjacent track, a shadow was thrown, which darkened slightly the cement floor space where the plaintiff was at

work, and required the occasional use by the workers of small oil torches. The locomotives are equipped with a dark piece of convexo-concave metal, about thirteen inches long, eight inches wide, and six inches high, that is used to replace a derailed engine or car upon the rails. This device had been taken off the tender of the engine, where it is usually kept, and put nearby in the shadow, without the plaintiff becoming aware of this circumstance. The testimony is that, when the repairs to a locomotive are so extensive as to require two or three days, various parts are laid on the floor, but that this is not the practice when the job is not so general, as was the case in the present instance, which was the removal and replacement of the reach rod or bar. The rod was eleven feet long, three inches wide, and three-fourths of an inch thick, and weighed 125 or 150 pounds. The machinist and his helper, the plaintiff, took the rod down, and the plaintiff and the machinist were holding it, and, while carrying his end and backing away from the locomotive, the plaintiff struck his heels against the metal device, which was lying unobserved in the shadow, tripped, and fell backward, with the heavy rod upon him, and was injured.

In order that the plaintiff may recover under the Federal Employers' Liability Act for his injury, his employer must be a common carrier engaged in interstate commerce by railroad, and so engaged at the time of the accident, which must have happened through the negligence of the carrier or its servants, while the servant was employed by the carrier in such commerce. *Federal Employers' Liability Act,* sec. 1 (45 U. S. C. A., sec. 51); *Erie R. Co. v. Welsh,* 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319; *Toledo etc. Ry. Co. v. Allen,* 276 U. S. 165, 48 S. Ct. 215, 72 L. Ed. 513. As a general rule, the application of this statute is to the carrier's own servants.

The first difficulty encountered is that the plaintiff was not an employee of the railway company when the injury was received, but of an independent contractor, whose obligations to the carrier and relation to interstate commerce have been stated in this opinion at sufficient length to indicate

their nature. However, section 5 of the statute enacts that "any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent`be void." U. S. C. A., title 45, sec. 55, p. 506. Unless this contract between the public carrier and the employer of the plaintiff is a contract or device whose purpose or intent is to enable the carrier to exempt itself from any liability created by the Federal Employers' Liability Act, the plaintiff is not within the terms. Sections 1 and 5 of the Federal Employers' Liability Act; *Roberts on Federal Liabilities of Carriers* (2nd Ed.), secs. 932-942.

It does not appear that the Dickson Construction & Repair Company was, in fact or in contemplation of law, the agent of the carrier when the former corporation employed its servants. There is no proof, apart from the contract itself, that the contract was a device conceived with the purpose or intent to enable the carrier to exempt itself from any liability created by the statute; and, while it is true the service provided by the company was made subject to certain limitations, which were ascribable to the exigent and paramount demands of railway transportation and its commensurate requirements, the company controlled its own service through its selected servants, whose duties it fixed and defined, whose work it directed and supervised, whose wages it set and paid; and whose removal was at its pleasure. *Robinson v. Balto. & O. R. Co.,* 237 U. S. 84, 35 S. Ct. 491, 59 L. Ed. 849; *Linstead v. Chesapeake & O. R. Co.,* 276 U. S. 28, 33, 34, 48 S. Ct. 241, 72 L. Ed. 453, 455, 456; *Klar v. Erie R. Co.,* 118 Ohio St. 612, 162 N. E. 793, *certiorari* denied 279 U. S. 818, 49 S. Ct. 342, 73 L. Ed. 975; *Chicago, R. I. & P. R. Co .v. Bond,* 240 U. S. 449, 36 S. Ct. 403, 60 L. Ed. 735; *Chicago & Alton R. Co. v. Wagner,* 239 U. S. 452, 36 S. Ct. 135, 60 L. Ed. 379; *Philadelphia, B. & W. R. Co. v. Schubert,* 224 U. S. 603, 32 S. Ct. 589, 56 L. Ed. 911; *Wells Fargo & Co. v. Taylor,* 254 U. S. 175, 41 S. Ct. 93, 65 L. Ed. 205. Compare: *Continental Ins. Co. v. United States,* 259

U. S. 156, 171, 42 S. Ct. 540, 66 L. Ed. 871, 884; *Erie R. Co. v. Margue* (C. C. A.), 23 Fed. (2nd) 664; *Erie R. Co. v. Orozco* (C. C. A.), 27 Fed. (2nd) 1017.

The court, however, will refrain from a determination of whether or not this contract comes within the denunciation of section 5, because there is no necessity, in view of our conclusion with respect to the nature of the plaintiff's employment at the time of his injury. Assuming, but without so deciding, that the plaintiff must be considered an employee of the defendant by force of section 5, the test whether he was, at the time of his injury, engaged in interstate commerce within the meaning of the act, is, Was he engaged in interstate transportation or in work so closely related to such transportation as to be practically a part of it? *Chicago & N. W. R. Co. v. Bolle,* 284 U. S. 74, 52 S. Ct. 59, 76 L. Ed. 2, decided November 23rd, 1931; *New York, N. H. & H. R. Co. v. Bezue,* 284 U. S. 415, 52 S. Ct. 205, 76 L. Ed. 258, decided January 25th, 1932; *Chicago & E. I. R. Co. v. Industrial Commn.,* 284 U. S. 296, 52 S. Ct. 151, 76 L. Ed. 204, decided January 4th, 1932; *Balto. & O. Southwestern R. Co. v. Burtch, Administratrix,* 263 U. S. 540, 543, 44 S. Ct. 165, 68 L. Ed. 433, 437; *Boyer v. Pennsylvania Ry. Co.,* 162 Md. 328, 159 A. 909.

Although the proof is that the locomotive was of a small type that was employed in the railway yard, the testimony is indefinite and unsatisfactory with reference to the time of the accident, and the particular locomotive undergoing repair. At best, the plaintiff's testimony goes no further than tending to show that he was injured while repairing a certain type of railway locomotive which was not used exclusively in one kind of transportation, but which was operated indiscriminately in either intrastate or interstate transportation, without its being ascertained from what form of transportation it was withdrawn or to which it was, after the interval of repair, allocated. So far as this record discloses, the work in which plaintiff was engaged at the time of his injury had no proximate relation to any element of interstate transportation. *Minneapolis etc. R. Co. v. Winters,* 242 U. S. 353,

359, 37 S. Ct. 170, 61 L. Ed. 358; *Erie R. Co. v. Welsh,* 242 U. S. 303, 37 S. Ct. 116, 61 L. Ed. 319; *Roberts, Federal Liabilities of Carriers* (2nd Ed.), sec. 765, p. 1469; *Hines v. Industrial Accident Comm.,* 184 Cal. 1, 192 P. 859, *certiorari* denied 254 U. S. 655, 41 S. Ct. 218, 65 L. Ed. 459; *Conklin v. New York Central R. Co.,* 206 App. Div. 524, 202 N. Y. S. 75, affirmed 238 N. Y. 750, 144 N. E. 895, *certiorari* denied 266 U. S. 607, 45 S. Ct. 93, 69 L. Ed. 465; *Morini v. Erie R. Co.,* 227 App. Div. 822, 237 N. Y. S. 375, affirmed 253 N. Y. 539, 171 N. E. 773; *Bissett v. Lehigh Valley R. Co.,* 102 N. J. Law, 283, 132 A. 302, affirmed 103 N. J. Law, 172, 134 A. 915; *New York, N. H. & H. R. Co. v. Bezue,* 284 U. S. 415, 52 S. Ct. 205, 76 L. Ed. 258, decided January 25th, 1932; *Onley v. Lehigh Valley R. Co.* (C. C. A.), 36 Fed. (2nd) 706; *Wise v. Lehigh Valley R. Co.* (C. C. A.), 43 Fed. (2nd) 694. Compare: *New York Central R. Co. v. Marcone,* 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892; *Industrial Accident Comm. v. Davis,* 259 U. S. 182, 42 S. Ct. 489, 66 L. Ed. 888.

The locomotive was withdrawn from service for repair, and this withdrawal was not a mere temporary or emergency interruption of the locomotive's continuous use in the course of a movement in interstate transportation. At the time of the accident it was so dismantled as not to be capable of operation, and the labor requisite to restore it to usefulness had to be first done, and the nature of the transportation in which it would be next used was undetermined and dependent upon conditions and circumstances which varied from hour to hour, and therefore made unpredictable whether the next railway use would be interstate or intrastate. The proof that the engine when repaired might be used in either form of transportation does not bring an employee engaged in repair work, while the engine is so temporarily withdrawn from service, within the statute, and the plaintiff therefore cannot recover in this action. *Supra.* This conclusion renders it unnecessary to consider the other questions on the record.

*Judgment affirmed, with costs.*