CASTLE, Respondent, v. THOMSON, Appellant
(12 N. W.2d 547.)
(File No. 8609. Opinion filed December 28, 1943.)

**Churchill & Churchill,** of Huron, for Appellant.
**Tom H. Luby,** of Huron, for Respondent.

ROBERTS, P.J. This is a proceeding instituted by plaintiff under the provisions of the Workmen's Compensation Law (SDC 64) to recover for the death of her husband who was an employee of defendant railroad company, a carrier engaged in both intrastate and interstate commerce. Defendant appeals from a judgment of the circuit court affirming an award made by the industrial commissioner.

The only contention presented is that deceased, at the time of his fatal injury, was engaged in interstate commerce within the purview of the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq. and consequently the Workmen's Compensation Law of this state did not apply and the industrial commissioner was without jurisdiction to make an award.

The judgment of the circuit court approving the award in favor of the plaintiff is based upon findings to the effect that the deceased, Floyd A. Castle, employed as a skilled mechanic by defendant company in its roundhouse at Huron, was instructed by his foreman to repair a switch engine; that this engine was taken out of service because of its defective condition; and that it had not been assigned to the transportation of cars in interstate commerce and at the time of the accident was not an instrumentality of interstate commerce.

The material facts are not in dispute. Deceased was injured while engaged in repairing the power reverse gear on a switch engine used in the Huron yards in making up trains and switching cars employed both in intrastate and interstate commerce. On December 15, 1938, the day before the accident, this engine went into service at 2:30 in the afternoon. The engineer testified that when the switching crew had completed its work shortly before midnight and the engine was taken to the roundhouse for the usual servicing he reported to the foreman in charge of the roundhouse that the power reverse was leaking air. He had made the same report when the engine was taken to the roundhouse the previous night and whatever work had been done on the power reverse had been ineffective. The repair,

requiring about two hours, was completed on December 17, and the engine was returned on December 18 to its customary use in the switchyard.

 If upon the facts disclosed by the record this case arose under and was governed by the Federal Employers' Liability Act, the compensation law of this state did not apply. In determining the applicability of the federal act, the interpretation placed upon it by the United States Supreme Court is controlling. This court in Johnson v. Chicago & N. W. R. Co., 69 S. D. 111, 7 N. W.2d 145, following the rule laid down in Shanks v. Delaware, L. & W. R. Co., 239 U. S. 556, 36 S. Ct. 188, 60 L. Ed. 436, held that the test whether a railroad employee at the time of his injury was engaged in "interstate commerce" within the meaning of the federal act, prior to its amendment of August 11, 1939, 53 U. S. Stat. 1404, was whether he was engaged in interstate transportation or in work so closely related to it as to be practically a part of it.

In Chicago & N. W. R. Co. v. Bolle, 284 U. S. 74, 52 S. Ct. 59, 61, 76 L. Ed. 173, the court distinguishes between "interstate transportation" and "interstate commerce" as follows:

"It will be observed that the word used in defining the test (referring to Shanks v. Delaware, L. & W. R. Co. supra) is 'transportation,' not the word 'commerce.' The two words were not regarded as interchangeable, but as conveying different meanings. Commerce covers the whole field of which transportation is only a part; and the word of narrower signification was chosen understandingly and deliberately as the appropriate term. The business of a railroad is not to carry on commerce generally. It is engaged in the transportation of persons and things in commerce; and hence the test of whether an employee at the time of his injury was engaged in interstate commerce, within the meaning of the act, naturally must be whether he was engaged in interstate transportation, or in work so closely related to such transportation as to be practically a part of it."

It is clearly apparent that deceased, at the time of the accidental injury resulting in his death, was not actually engaged in interstate transportation. The decisive consideration is whether he was engaged in work so closely related to interstate transportation as to be practically a part of it.

In New York, N. H. & H. R. Co. v. Bezue, 284 U. S. 415, 52 S. Ct. 205, 207, 76 L. Ed. 370, 77 A. L. R. 1370, plaintiff employed in a railroad roundhouse and repair shop was injured while assisting in handling the driving wheels of a locomotive used in interstate transportation, which was in the repair shop for its monthly boiler wash and various repairs, taking twelve days to perform. In holding that the federal statute did not apply, the court said: "The criterion of applicability of the statute is the employee's occupation at the time of his injury. * * * Under the circumstances of this case, whether respondent is within the act must be decided not by reference to the kind of plant in which he worked, or the character of labor he usually performed, but by determining whether the locomotive in question was, at the time of the accident, in use in interstate transportation or had been taken out of it."

Defendant relies upon decisions like New York Cent. R. Co. v. Marcone, 281 U. S. 345, 50 S. Ct. 294, 74 L. Ed. 892, where the injured roundhouse employee was oiling a locomotive which had shortly before entered the roundhouse. The basis for holding the federal act applicable was that the engine on which the injured employee last worked was used in hauling interstate trains and had not been withdrawn form such service. We do not think that such cases are controlling. They involve repair on engines, cars or other similar instrumentalities exclusively used in interstate commerce and not definitely withdrawn from such service while the repair work is in progress. The court in Industrial Acc. Comm. v. Davis, 259 U. S. 182, 42 S. Ct. 489, 491, 66 L. Ed. 888, observed that the placing of an engine used in interstate commerce in a roundhouse for repair would not necessarily operate to withdraw it from interstate commerce. The

court said: "The federal act gives redress only for injuries received in interstate commerce. But how determine the commerce? Commerce is movement, and the work and general repair shops of a railroad, and those employed in them are accessories to that movement, indeed, are necessary to it; but so are all attached to the railroad company, official, clerical or mechanical. Against such a broad generalization of relation we, however, may instantly pronounce and successively against lesser ones, until we come to the relation of the employment to the actual operation of the instrumentalities for a distinction between commerce and no commerce. In other words, we are brought to a consideration of degrees, and the test declared, that the employe at the time of the injury, must be engaged in interstate transportation, or in work so closely related to it as to be practically a part of it, in order to displace state jurisdiction and make applicable the federal act. And there is a difference in the instrumentalities. In some, the tracks, bridges and roadbed and equipment in actual use, may be said to have definite character and give it to those employed upon them. But equipment out of use, withdrawn for repairs, may or may not partake of that character according to circumstances, and among the circumstances is the time taken for repairs—the duration of the withdrawal from use. * * * There may be only a placement upon a sidetrack or in a roundhouse—the interruption of actual use, and the return to it, being of varying lengths of time, or there may be a removal to the repair and construction shops, a definite withdrawal from service and placement in new relations; the relations of a workshop, its employments and employes having cause in the movements that constitute commerce, but not being immediate to it. And it is this separation that gives character to the employment, as we have said, as being in or not in commerce."

Deceased, however, at the time of his injury was engaged in repairing an engine operated exclusively in Huron in switching intrastate and interstate cars. It passed from one kind of traffic to another. There was no relation of

one movement to another and they constituted "a succession of separate tasks" and not a "series of acts" which were a part of "a single and indivisible task." Erie R. Co. v. Welsh, 242 U. S. 303, 37 S. Ct. 116, 118, 61 L. Ed. 319; Illinois Cent. R. Co. v. Behrens, Adm'r, 233 U. S. 473, 34 S. Ct. 646, 58 L. Ed. 1051, Ann. Cas. 1914C, 163; Cihcago, B. & Q. R. Co. v. Harrington, 241 U. S. 177, 36 S. Ct. 517, 60 L. Ed. 941; cf. New York Central & H. R. R. Co. v. Carr, 238 U. S. 260, 35 S. Ct. 780, 59 L. Ed. 1298.

In Minneapolis & St. L. R. Co. v. Winters, 242 U. S. 353, 37 S. Ct. 170, 171, 61 L. Ed. 358, Ann. Cas. 1918B, 54, plaintiff brought suit under the Federal Employers' Liability Act for injuries sustained by him while engaged in repairing an engine of the defendant company. The railroad company interposed the defense that the case was not governed by the federal act and in sustaining this contention the court said: "An engine, as such, is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined especially to anything more definite than such business as it might be needed for. It was not interrupted in an interstate haul to be repaired and go on. It simply had finished some interstate business and had not yet begun upon any other. Its next work, so far as appears, might be interstate or confined to Iowa, as it should happen. At the moment it was not engaged in either. Its character as an instrument of commerce depended on its employment at the time, not upon remote probabilities or upon accidental later events."

In Hines v. Industrial Acc. Comm., 184 Cal. 1, 192 P. 859, 864, 14 A. L. R. 720 (certiorari denied 254 U. S. 656, 41 S. Ct. 218, 65 L. Ed. 460), an award was made in favor of the plaintiff as compensation for the death of one Angelo Brizzolara. It appears from the facts that Brizzolara, at the time of his injury resulting in his death, was engaged in making repairs on a switch engine. Defendant contended that the case was governed by the Federal Employers' Liability Act and in overruling this contention the court said:

"The general test as to the character of the employment

is whether the employe was engaged in an act so directly and immediately connected with interstate business as substantially to form a part or necessary incident thereof. Thus, * * * where the instrumentality upon which the employe was working was, at the time of the injury neither engaged in, nor loaded with, interstate traffic, as in the Winters case, then compensation may be awarded under a state compensation act. * * *

"We think that, at the time Brizzolara received the injury which caused his death he was not engaged in interstate commerce. The engine which he was repairing was not used exclusively in such commerce. Indeed, as was said in the Winters case:

" 'An engine as such is not permanently devoted to any kind of traffic, and it does not appear that this engine was destined * * * to anything more definite than such business as it might be needed for.' "

See also Davis v. Baltimore & O. R. Co., 6 Cir., 10 F.2d 140, 141; Morini v. Erie R. Co., 227 App. Div. 822, 237 N. Y. S. 375, affirmed 253 N. Y. 539, 171 N. E. 773; Rexrard v. Western Maryland R. Co., 162 Md. 566, 160 A. 730; Wise v. Lehigh Valley R. Co., 2 Cir., 43 F.2d 692; Onley v. Lehigh Valley R. Co., 2 Cir., 36 F.2d 705; White v. Lehigh Valley R. Co., 251 App. Div. 507, 297 N. Y. S. 933; Bissett v. Lehigh Valley R. Co., 102 N. J. L. 283, 132 A. 302; Sullivan v. New York, N. H. & H. R. Co., 2 Cir., 74 F.2d 725.

■ The engine which deceased was repairing at the time of the accidental injury resulting in his death was not exclusively used in interstate commerce and there was not a mere temporary withdrawal from such use while the repair work was in progress. It was used indiscriminately in interstate and intrastate work and it was not known to which kind of traffic it would be devoted after repair. The repair of the engine was therefore too remote to be identified as work so closely related to interstate transportation as to be practically a part of it.

The judgment appealed from is affirmed.

All the Judges concur.