DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which granted the motion for summary judgment filed by appellee, Hood Industries, Inc. d/b/a Atlas Roofing Corporation ("Atlas"), against appellant, Bill Perron, regarding appellant's claim of age discrimination, violations of *Page 2 
Ohio public policy, and negligence. For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} In April 1991, appellant was employed by Atlas as the Regional Manager of the Midwest Region, and was eventually promoted to Senior Regional Manager. In May 2002, according to appellant, he voluntarily resigned from his position as Senior Regional Manager, and entered into a "Sales Agent Agreement" ("the agreement") with Atlas. As a sales agent, appellant would sell Atlas's product lines to distributors and educate contractors regarding Atlas's products. Appellant's home address was listed as his office.
 {¶ 3} The agreement contained the following pertinent provisions. Appellant was given a particular territory, which could be adjusted at Atlas's sole discretion, and was to use his "best efforts to pursue business and orders from customers in the assigned territory." Appellant was compensated solely by commission, based on the net invoice value of shipments of products made by Atlas into appellant's territory.[1]
Appellant was not entitled to any fringe benefits, including pension or health benefits, because appellant was "engaged in [his] own independent business." The agreement stated that no taxes of any kind would be withheld or paid by Atlas on appellant's behalf, that appellant understood he was responsible for paying his income taxes and, potentially, self-employment tax, and that *Page 3 
appellant "shall not be treated as an employee with respect to the work or services performed hereunder for federal or state tax purposes."
 {¶ 4} Additionally, the agreement stated that Atlas was not responsible for worker's compensation, that none would be obtained by Atlas for appellant or his employees, and that appellant must comply with applicable worker's compensation laws. Appellant was also required to pay all "expenses and bear all liability and obligations incurred in the operation of [his] business," and maintain appropriate automobile and liability insurance for himself and his employees. Appellant was allowed to employ a sub-agent to sell Atlas's products; however, Atlas reserved the right to review any additional personnel added by appellant as a sub-agent.
 {¶ 5} As a sales agent, the agreement stated that appellant's authority was limited to "securing orders for the products in accordance with the then current prices, terms, product representations and warranties" and that no language in the agreement "shall be construed to constitute [appellant] as an employee of [Atlas], it being intended that the Agent shall remain an Independent Contractor." Appellant agreed not to "accept orders in the name of the Company or make price quotations or delivery promises." Appellant was also required to furnish Atlas with credit information regarding appellant's customers. Atlas reserved the right to add or delete products offered for sale through appellant, "to establish, change, or amend prices and/or other terms and conditions of sale," to accept or reject any orders placed through appellant, and to allow customers to cancel an order after it has been accepted. *Page 4 
 {¶ 6} Appellant was prohibited, without written consent from Atlas, from pursuing orders for products which were competitive to the products offered by Atlas, and from maintaining an ownership interest, either directly or indirectly, in any enterprise which manufactured or marketed products which were competitive to the products offered by Atlas. Appellant, however, testified in his deposition that sales agents were typically sales representatives for Atlas and other manufacturers simultaneously, although he did not represent any other manufacturing line.
 {¶ 7} The agreement indicated that because of Atlas's commitment to the concept of equal employment opportunity in all facets of its business, appellant agreed to uphold the principles of equal employment opportunity and to oppose illegal discrimination and harassment, including sexual harassment, insofar as possible in the execution of his responsibilities under the agreement. The agreement stated that it was to continue indefinitely unless "terminated by either party, with or without cause, upon thirty (30) days written notice to the other."
 {¶ 8} In early October 2003, having heard that he was being replaced as the sales agent in his territory, appellant spoke with David Spaulding, who had become Regional Manager after appellant retired. Appellant was informed that he was going to be replaced on January 1, 2004 by Mike Simmons, operating as Simmco Sales, Inc.[2] Appellant testified that he had not intended to stop working at that stage in his life and that his *Page 5 
Social Security benefits would be reduced if he retired before age 65, plus four months.[3] In a letter dated October 24, 2003, appellant provided Spaulding with the pertinent Social Security information and requested that he be provided one and one-half percent interest on net sales made in his territory through the end of October 2004:
 {¶ 9} "If Tom[4] can kick in 1% on net sales, and Mike [Simmons] can kick in ½% until end of Oct. 04, that would make my retirement a little more comfortable, and I'll work hard for a smooth transition."
 {¶ 10} On October 27, 2003, Spaulding wrote appellant that Atlas agreed to pay appellant one percent through October 31, 2004, and stated that if appellant could "lend a hand to insuring a smooth transition for Simmco Sales during 2004 [he] would greatly appreciate it" and that he would like to have appellant continue to periodically meet with Dave Moorhead, President of North Coast Commercial Roofing Systems, a major account for Atlas. On October 30, 2003, appellant wrote to Rowe, explaining that appellant's territory was profitable and would exceed the year's goals, and requesting Rowe to reconsider and leave appellant in place during 2004. Spaulding responded to appellant and stated that Atlas "intends on moving forward with our transition plan for 2004." *Page 6 
 {¶ 11} On October 31, 2003, in response to a critical e-mail from Moorhead, Spaulding explained the transition to Moorhead as follows:
 {¶ 12} "[A]s Bill approaches his 65th birthday (late June 2004) we thought of using 2004 as a `transition year' for Bill by starting to develop Bill's eventual replacement group, Simmco Sales Inc. Atlas's game plan for Bill Perron had always been for Bill to handle the commercial line for a couple of years, to get him past his 65th birthday. Tom Rowe and I felt that 2004 might be a good time to initiate a transition plan whereby the Simmco Sales team would work to transition into the territory and Bill Perron would eventually transition out, both parties working side by side selling the Atlas commercial line. * * *
 {¶ 13} "Thus, the 2004 transition plan would * * * keep Bill Perron compensated through November 1, 2004, keeping his Social Security benefits in tack [sic] without fear of penalty for early retirement. * * *
 {¶ 14} "Maybe I misunderstood but when I first came on board I was told that Bill would be our commercial representative for a couple of years, and once he turned 65 he would be looking to step down and let another group take over. In fact, I seem to recall Tom Rowe, Bill Perron, you and me sitting in your conference room as this very subject came up, with Simmco Sales name being mentioned as a future replacement for Bill. I felt that since Bill's 65th birthday was coming up in 2004 that this might be the most opportune time to begin the transition process * * * ." *Page 7 
 {¶ 15} On or about November 19, 2003, appellant signed the "2004 Special Sales Representative Agreement," which stated:
 {¶ 16} "Effective January 1, 2004, Atlas Roofing Corporation and BP Enterprises (Bill Perron) agree to enter into a Special Sales Representative Agreement for the period from January 1, 2004 until October 31, 2004. The Special Sales Representative Agreement will replace the existing 2003 Atlas/BP Enterprises contract at the end of 2003. Territory C15 will be turned over to Simmco Sales, Inc. for the 2004 contract year, effective January 1, 2004.
 {¶ 17} "Terms of the Sales Representative Agreement are as follows: Atlas Roofing Corporation agrees to compensate BP Enterprises for Net Sales of all Atlas Commercial Products in territory C15 (state of Ohio) at a commission rate of 1% of Net Sales, beginning on January 1, 2004 and terminating at the end of business on October 31, 2004. * * *"
 {¶ 18} Appellant attempted to get Michigan's territory, when its sales agent began selling for another company; however, on February 7, 2004, appellant was informed that he was not selected. Spaulding stated, "In the end we decided to fulfill the long-term needs for territory C16 [Michigan] now rather than wait until 2005." On February 11, 2005, appellant wrote Warren Hood of Hood Industries and requested that he be compensated for the difference between the amount he received in 2004 and what he would have received in commissions had he remained the sales agent in Ohio. *Page 8 
 {¶ 19} Appellant sued Atlas on August 1, 2005, alleging age discrimination, in violation of R.C. 4112.14, wrongful discharge in violation of public policy, and negligence. On September 1, 2006, Atlas filed a motion for summary judgment as to each of appellant's claims, asserting that appellant was an independent contractor, not an employee, during the time period alleged in appellant's complaint. Appellant responded that Atlas admitted in its answer that appellant was an employee. Alternatively, appellant argued that a genuine issue of material fact existed with respect to whether he was an employee. On November 17, 2006, the trial court granted Atlas's motion for summary judgment on the bases that Atlas did not admit that appellant was its employee and because the evidence was insufficient to create a genuine issue of material fact regarding whether appellant was Atlas's employee. Because appellant was an independent contractor, and not an employee, the trial court held that appellant was not entitled to the protections afforded by R.C. 4112.14.
 {¶ 20} Appellant timely appealed the decision of the trial court and raises the following assignments of error on appeal:
 {¶ 21} "First Assignment of Error:
 {¶ 22} "The trial court erred by granting Appellee's Motion for Summary Judgment on Perron's claim of age discrimination under Ohio Revised Code ("O.R.C.") § 4112.14. *Page 9 
 {¶ 23} "Second Assignment of Error:
 {¶ 24} "The trial court erred by granting Appellee's Motion for Summary Judgment on Perron's claim of violation of Ohio public policy.
 {¶ 25} "Third Assignment of Error:
 {¶ 26} "The trial court erred by granting Appellee's Motion for Summary Judgment on Perron's claim for negligence."
 {¶ 27} Appellant argues in his first assignment of error that the question of whether an individual is an employee or an independent contractor is a question of fact for the jury to decide, and is not appropriate for summary judgment. Appellant also argues that the trial court failed to use the common law agency test to determine whether appellant was Atlas's employee. Appellant asserts that an analysis of the factors listed in the common law agency test demonstrates that there were genuine issues of material fact prohibiting the trial court from granting summary judgment. Further, appellant asserts that Atlas admitted appellant was an employee in its answer and, therefore, was estopped from claiming that appellant was not an employee in its motion for summary judgment.
 {¶ 28} R.C. 4112.14(A) states that "No employer shall discriminate in any job opening against any applicant or discharge without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job and laws pertaining to the relationship between employer and employee." R.C.4112.01(A)(3) defines "employee" as "an individual employed by any employer," and R.C. 4112.01(A)(2) defines "employer" as "any person employing four or *Page 10 
more persons within the state, and any person acting directly or indirectly in the interest of an employer." The term "employed" is not defined by the statute.
 {¶ 29} Whether a person is an employee or an independent contractor depends on the character of the arrangement between the person and the employer. Gillum v. Indus. Comm. (1943), 141 Ohio St. 373, paragraph two of the syllabus. In particular, the Ohio Supreme Court has considered whether the employer has reserved the right to control the manner or means of doing the work. Id. See, also, Bostic v. Connor (1988),37 Ohio St.3d 144, paragraph one of the syllabus. "[I]f the employer reserves the right to control the manner or means of doing the work, the relation created is that of master and servant, while if the manner or means of doing the work or job is left to one who is responsible to the employer only for the result, an independent contractor relationship is thereby created." Gillum at paragraph two of the syllabus.
 {¶ 30} Factors to be considered in determining who has the right of control includes indicia such as "who controls the details and quality of the work; who controls the hours worked; who selects the materials, tools and personnel used; who selects the routes traveled; the length of employment; the type of business; the method of payment; and any pertinent agreements or contracts." Bostic at 146. Retention of certain controls, however, do not necessarily create an employee-employer relationship, as discussed in Gillum at 382-383:
 {¶ 31} "As stated in 27 American Jurisprudence, 488, Section 7: `As a practical proposition, every contract for work to be done reserves to the employer a certain degree *Page 11 
of control, at least to enable him to see that the contract is performed according to specifications. The employer may exercise a limited control over the work without rendering the employee a mere servant, for a relation of master and servant is not inferable from a reservation of powers which do not deprive the contractor of his right to do the work according to his own initiative, so long as he does it in accordance with the contract. The control of the work reserved in the employer which effects a master-servant relationship is control of the means and manner of performance of the work, as well as of the result; an independent contractor relationship exists where the person doing the work is subject to the will of the employer only as to the result, but not as to the means or manner of accomplishment. Thus, a person employed to perform certain work is not necessarily a mere servant because the contract provides that the work shall be subject to the approval or satisfaction of the employer. Such a provision is not an assumption by the employer of the right to control the person employed as to the details or method of doing the work, but is only a provision that the employer may see that the contract is carried out according to the plans.' See also, 21 Ohio Jurisprudence, 626, Section 4; Miller v.Metropolitan Life Ins. Co., 134 Ohio St. 289, 291; Industrial Commissionv. McAdow, 126 Ohio St. 198; Klar v. Erie R. Co., 118 Ohio St. 612;Hughes v. Cincinnati S. Railway Co., 39 Ohio St. 461; Pickens Plummer v. Diecker Bros. [(1871), 21 Ohio St. 212]."
 {¶ 32} In Nationwide Mut. Ins. Co. v. Darden (1992), 503 U.S. 318,325, the United States Supreme Court adopted a common law agency test for determining who *Page 12 
qualifies as an "employee." Darden at 323-324. The factors to be considered in making such a determination are similar to those cited inBostic, supra, and include (1) the hiring party's right to control the manner and means by which the product is accomplished; (2) the skill required to perform the work; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; and (13) the tax treatment of the hired party. Id., citing Reid, 490 U.S. at 751-752. The court noted that "`all of the incident of the relationship must be assessed and weighed with no one factor being decisive.'" Id., citing NLRB v. United Ins. Co. ofAmerica (1968), 390 U.S. 254, 258.
 {¶ 33} The Sixth Circuit utilized a comparable analysis of "control" in determining whether an individual was an employee for purposes of R.C. Chapter 4112. Eyerman v. Mary Kay Cosmetics, Inc. (C.A.6, 1992),967 F.2d 213, 217-219. Since Eyerman, the Sixth Circuit has used the common law agency test set forth in Darden to determine whether an individual is an employee or independent contractor. See Johnson v. Cityof Saline (C.A.6, 1998), 151 F.3d 564; Shah v. Deaconess Hosp. (C.A.6, 2004), 355 F.3d 496; and Weary v. Cochran (C.A.6, 2004), 377 F.3d 522. *Page 13 
 {¶ 34} "Generally, where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court."Bostic, 37 Ohio St.3d at 146, citing Schickling v. Post PublishingCo. (1927), 115 Ohio St. 589, syllabus. The issue, however, becomes a jury question when there is sufficient evidence presented, that the claimant was an employee rather than an independent contractor, to permit reasonable minds to reach different conclusions on that issue. Id. at 146-147, citing Industrial Commission v. Laird (1933),126 Ohio St. 617, paragraph three of the syllabus.
 {¶ 35} Although in Bostic the issue was one for the jury to decide, inEyerman and Weary, supra, the Sixth Circuit made the determination, as a matter of law pursuant to summary judgment, that there was not significant indicia of control to establish a genuine issue of material fact regarding whether the hired parties were employees, rather than independent contractors. In Eyerman, the complainant argued that the company maintained control over the manner in which she conducted her business by providing her with pink Cadillacs, travel reimbursement, and business cards; requiring her to attend certain meetings and wear certain clothes to those meetings; and asking her to give motivational speeches. The court, however, held that none of the "indicia of control" presented by Eyerman "involved significant control over the way Eyerman conducted her business" and found that she failed to raise a genuine issue of material fact as to whether she was an employee.Eyerman, 967 F.2d at 218. *Page 14 
 {¶ 36} Similarly, in Weary, although the hired party was subject to compliance with legal and ethical rules and administrative guidelines set by the company, the court held that the company's authority over those aspects of Weary's operations was understandable because it would have "`a substantial interest in controlling the advertising of their products because [they] may be liable for [the plaintiffs] misstatements or misrepresentations.'" Weary, 377 F.3d at 526, citing Oestman v.National Farmers Union Ins. (C.A. 10, 1992), 958 F.2d 303, 306. As such, the court held that the controls imposed upon the hired party did not undermine the court's conclusion that "Weary controlled the manner and means by which he performed his job," and affirmed the decision granting summary judgment. Id.
 {¶ 37} We are held to the same standard of law as the trial court with respect to determining summary judgment. Lorain Natl. Bank v. SaratogaApts. (1989), 61 Ohio App.3d 127, 129. As such, summary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). This review is done by an appellate court de novo, Grafton v. Ohio Edison Co. (1996),77 Ohio St.3d 102, 105, and requires the court to independently examine the evidence to determine, without deference to the trial court's determination, if summary judgment is warranted. Brewer v. ClevelandCity Schools (1997), 122 Ohio App.3d 378, 383, citing Brown v. CountyComm'rs (1993), 87 Ohio App.3d 704, 711. *Page 15 
 {¶ 38} In this case, appellant signed a contract regarding his status as sales agent. The parties agreed throughout the agreement that appellant was an independent contractor and not an employee of Atlas. Indicators of this status included the fact that appellant worked out of his home and made contacts with customers throughout his territory; decided his own hours to work; only received payment in the form of commissions on the product he sold; had his own employee, Mike Simmons; maintained his own insurance coverages; received no fringe benefits, including pension or health coverage; and was required to pay his own taxes. Appellant testified that he only represented Atlas's product line, but the agreement did not prevent appellant from carrying other product lines that were not in competition with Atlas. Additionally, the 2004 Special Agreement stated that appellant was doing business with Atlas as "BP Enterprises."
 {¶ 39} Appellant responds, however, that the agreement also contains elements that demonstrate Atlas's control, which caused the relationship to be one of employer-employee. In particular, all orders were subject to acceptance by Atlas; Atlas had the right to fix the term and conditions on any order it accepted; all prices were established by Atlas; Atlas could add or delete at its discretion the amount and type of products offered for sale; and Atlas retained the right to approve the hiring of sub-agents. Appellant worked for Atlas from 1991-2002 as a regional manager; however, he had retired from that position and was only a sales agent for a little over a year before being notified of Atlas's intention to give his territory to another sales agent. *Page 16 
 {¶ 40} We find that the "indicia of control" offered by appellant is insufficient to create a genuine issue of material fact. Although Atlas maintained certain controls over the products it allowed appellant to sell, which Atlas would ultimately be responsible for shipping to the customer, Atlas did not control the way appellant conducted his business, i.e., his method for selling Atlas's product lines. Additionally, we find that the rights Atlas retained in the agreement are the type of provisions that can properly be asserted without creating a master-servant/employer-employee relationship. SeeGillum, 141 Ohio St. at 382-383; Eyerman, 967 F.2d at 218; Weary,377 F.3d at 526; and Oestman, 958 F.2d at 306
 {¶ 41} We further find not well-taken appellant's assertion that due to Atlas's admission in its answer, it was barred from asserting that appellant was not an employee. Appellant's complaint, at paragraph four, stated that "Plaintiff is an individual formerly employed by Defendant and is, therefore, an employee as defined in O.R.C. § 4112.01(A)(3)." Appellant was employed by Atlas from 1991 to 2002 and then retired. Thus, it is not incorrect that appellant was "formerly employed" by Atlas. With respect to appellant's allegation that he is an "employee" as defined by R.C. 4112.01(A)(3), we find that the paragraph admitted by Atlas did not specify a timeframe. Thus, we find that Atlas's admission did not establish that appellant was an "employee" at the time he was replaced with another sales agent and/or when his 2004 Special Agreement terminated.
 {¶ 42} Based on our review, we find that there were no genuine issues of material fact. Atlas did not control the manner of appellant's business in any way in which an *Page 17 
employee-employer relationship would have existed. As such, we find that appellant was an independent contractor when Atlas allegedly discriminated against him. Because R.C. 4112.14(A) refers to employment discrimination between an employer and an employee, we find that, as an independent contractor who was not controlled by Atlas, appellant is not entitled to pursue a claim pursuant to this statute. See Berger Hosp. v.Ohio Civil Rights Commission (June 26, 1987), 4th Dist. No. 86 CA 7; andEyerman, supra. Accordingly, appellant's first assignment of error is found not well-taken.
 {¶ 43} Having found that appellant was not an employee of Atlas, we find that Atlas is also entitled to summary judgment with respect to appellant's causes of action regarding violation of Ohio public policy and negligence. Accordingly, appellant's second and third assignments of error are also found not well-taken.
 {¶ 44} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 18 
Perron v. Hood Industries, Inc. C.A. No. L-06-1396
Peter M. Handwork, J. Judge, Mark L. Pietrykowski, P.J. Judge, Arlene Singer, J. Judge, CONCUR.
[1] Depending on the item sold, appellant's commissions ranged from one percent to five percent of the net sales.
[2] In 2003, Simmons was an agent for Atlas, representing a different line than appellant, and was also appellant's sub-agent for the commercial part of the products appellant sold.
[3] Appellant, who was born June 29, 1939, would be eligible for his full Social Security benefits if he continued working through October 31, 2004.
[4] Thomas Rowe was the Vice President of Atlas. *Page 1